UNITED STATES ex rel. CANDREVA v. SMITH, District Director in Immigration Service, et al.

Circuit Court of Appeals, Seventh Circuit. June 18, 1928.

Rehearing Denied September 6, 1928.

No. 4006.

1. Aliens ⬤�019 54(5)—Five-year limitation held applicable to deportation of alien, procuring passage for consideration paid seamen, without signing on ship's crew, and landing in defiance of rules; "stowaway" (Immigration Act 1917, §§ 1, 3, 19, 34 [8 USCA §§ 136, 155, 166, 173]).

An alien, who procured passage to the United States for consideration paid seamen, without signing on ship's crew, and who landed in defiance of inspection and landing rules, *held* a "stowaway," under Immigration Act Feb. 5, 1917, § 3 (8 USCA § 136), as to whom the five-year statute of limitations was applicable in deportation proceedings, and not the three-year statute, under section 19 (8 USCA § 155), though latter section includes aliens entering without inspection; a "stowaway" being defined as one who conceals himself aboard an outgoing vessel for the purpose of obtaining free passage, alien not being a seaman, under section 34 (8 USCA § 166), in view of section 1 (8 USCA § 173), limiting seamen to persons signing on ship's crew.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Stowaway.]

**2. Aliens ⊕�439;54(5)—Limitation on deportation of stowaways is not affected by limitation as to aliens entering without inspection (Immigration Act 1917, §§ 3, 19 [8 USCA §§ 136, 155]).**

Five-year limitation on deportation of stowaways, as defined by Immigration Act Feb. 5, 1917, § 3 (8 USCA § 136), is not affected by three-year limitation on deportation of persons entering without inspection, under section 19 (8 USCA § 155).

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Application by the United States, on the relation of Pietro Candreva, for writ of habeas corpus to be directed to S. D. Smith, District Director of the United States Department of Labor, Immigration Service, and others. The District Court dismissed the petition, and relator brings error. Affirmed.

Dominic H. Valens, of Chicago, Ill., for plaintiff in error.

George E. Q. Johnson and James G. Cotter, both of Chicago, Ill., for defendants in error.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge. Candreva, a native and citizen of Italy, complains of the dismissal by the District Court of his petition for habeas corpus for relief from his detention under a deportation order of the Secretary of Labor, reciting that he entered the United States June 23, 1924, without being charged to the quota for the fiscal year ending June 30, 1924, of the country of which he is native, and that he was a stowaway at the time of his entry into the United States.

The warrant for his arrest for deportation was issued July 30, 1927, and the only question raised is whether the applicable statutory period of limitation is three or five years. If three, he may not be deported, since more than three years elapsed from his entry to the commencement of the deportation proceedings; if five, then concededly he was subject to deportation, as it is not claimed he is here with lawful right.

Section 19 of the Immigration Act of February 5, 1917, is in part as follows:

"At any time within five years after entry, any alien who at the time of entry was a member of one or more of the classes excluded by law; any alien who shall have entered or who shall be found in the United States in violation of this subchapter, or in violation of any other law of the United States; * * * at any time within three years after entry, any alien who shall have entered the United States by water at any time or place other than as designated by immigration officials, or by land at any place other than one designated as a port of entry for aliens by the Commissioner General of Immigration, or at any time not designated by immigration officials, or who enters without inspection, shall, upon the warrant of the Secretary of Labor, be taken into custody and deported. * * *" 8 USCA § 155.

For the alien it is contended that he entered "without inspection," that the three-year limitation applicable for deportation of those who enter without inspection governs, and that therefore he is not subject to deportation. That he did enter without inspection is very evident; and, if no other condition or circumstance attending his entry may be considered, the three-year limitation would doubtless bar deportation.

Section 3 of the same act provides: "The following classes of aliens shall be excluded from admission into the United States: * * * [Here follows a long enumeration of classes, such as idiots, imbeciles, paupers, beggars, convicts, polygamists, anarchists, contract laborers, etc.] stowaways, except that any such stowaway, if otherwise admissible, may be admitted in the discretion of the Secretary of Labor. * * *" 8 USCA § 136. Then follow other classifications, with qualifications not applicable to stowaways.

For the representatives of the government it is contended that under the facts the alien was properly held to be a stowaway, and therefore one of the "classes excluded by law," and subject to deportation within five years after entry.

The circumstances of the alien's arrival and entry appear only from his testimony, which was to the effect that in December, 1923, he left Italy for Brazil, where he remained for five months. Desiring to enter the United States, he applied to a United States consul in Brazil, who told him he could not get a passport until he had resided in Brazil for five years; that he went on the ship Chincha to look for work, and met two Spanish seamen on the boat, one a fireman and the other an oiler, and they said they would take him to the United States; that he paid them $150 for passage, and did not sign on the ship's crew, and did not know whether the captain knew of his presence; that he worked as a fireman, receiving a few dollars and meals, and landed at Baltimore, a port

of entry, and left the boat with the two men, and went to the city with their permission.

Just how he entered, in view of the stringent immigration laws and rules respecting inspection and landing, does not appear. If, under such state of facts, he could be regarded as a "seaman," the limitation of deportation of three years after unlawful entry would govern, under section 34 of the same act (8 USCA § 166). But in view of section 1 of that act (8 USCA § 173), defining "seamen" to include "every person *signed on the ship's articles* and employed in any capacity on board any vessel arriving in the United States from any foreign port or place," it was not seriously urged that this alien falls within such classification, as it does not appear that he was so signed. There is no statutory definition of a stowaway. The general dictionary definition is: One who conceals himself aboard an outgoing vessel for the purpose of obtaining free passage.

[1] The conclusion is justified that the alien desired, not only passage to the United States, but entry therein, and it is fairly inferable from the facts that the service he expected from these two men was not only his passage, but his entry as well, and that what they received from him was not to pay for the passage, which manifestly they had no right to contract for, but by some unexplained artifice to keep his presence on the ship unknown to the responsible officers, and by some means to land him when they reached Baltimore.

It is more than likely that whatever work he did in the firemen's quarters was in the interest of the concealment of his presence from the ship's officers. The legal duty of the ship's officers to show upon the ship's papers, deliverable to the immigration officials, the names of all on board, including stowaways, makes it all the more probable that these men, doubtless experienced in such things, in consideration of the very substantial payment, manipulated the passage of this man in practical concealment, and his landing and entry in defiance of the stringent regulatory statutes and rules. This, in our judgment, would justify his inclusion in the excluded class of "stowaways," and the finding to that effect by the Secretary of Labor the court would not be at liberty to disturb.

[2] The five-year limitation upon deportation of "stowaways" is not affected by the three-year limitation upon deportation of such as have entered "without inspection."

The order of the District Court is affirmed.