## KANASZCZYC v. MATHEWS, Acting District Director of Immigration.

Circuit Court of Appeals, Sixth Circuit. February 15, 1929.

No. 5099.

Catherine G. Herlehy, of Detroit, Mich., for plaintiff in error.

C. Frederic Stanton, of Detroit, Mich. (John R. Watkins, U. S. Atty., of Detroit, Mich., on the brief), for defendant in error.

Before MOORMAN, HICKS, and HIC-KENLOOPER, Circuit Judges.

MOORMAN, Circuit Judge. The petitioner, an alien and subject of Poland, entered the United States by means of a rowboat, at a time and place not designated by immigration officials, and without inspection, on May 23, 1923. At the time of his entry he did not possess a properly viséed passport. On March 26, 1927, a warrant was issued for his arrest charging that he was subject to deportation because he had entered the country without being admitted and charged to the quota allotted to the country of which he was a native, in violation of the act of May 19, 1921 (42 Stat. p. 5), as amended by the joint resolution approved May 11, 1922 (42 Stat. p. 540), also because he had entered in violation of the President's proclamation issued pursuant to the acts of May 22, 1918 (Title 22, Sec. 223, U. S. C. [22 USCA § 223]), and March 2, 1921 (Title 22, Sec. 227, U. S. C. [22 USCA § 227]), in that he was not, at the time of his entry, in possession of a properly viséed passport, and also in violation of the Immigration Act of February 5, 1917 (Title 8, Sec. 136, USCA), in that he was a person likely to become a public charge at the time of his entry. At the hearing before an immigration inspector it was found that all the charges were true, and the petitioner was ordered deported. He thereupon filed a petition for a writ of habeas corpus, which upon hearing was denied. This appeal is from the order of denial.

There was no evidence introduced in the proceedings before the inspector to justify the finding that petitioner was likely to become a public charge when he entered the country. It did appear that he did not have a passport and that he entered without inspection and without being charged to the quota of the country of which he was a national. The proceedings were instituted under Section 19 of the Immigration Act of 1917 (Title 8, Sec. 155, USCA). That statute authorizes the Secretary of Labor to deport, at any time within five years after entry, "any alien who shall have entered or who shall be found in the United States in violation of this sub-chapter, or in violation of any other law of the United States." Following this general authorization, it directs the Secretary of Labor to deport other aliens who have done or shall be found doing certain specified things. Then it says: "At any time within three years after entry, any alien who shall have entered the United States by water at any time or place other than as designated by immigration officials, or by land at any place other than one designated as a port of entry for aliens by the Commissioner General of Immigration, or at any time not designated by immigration officials, or who enters without inspection, shall * * * be taken into custody and deported."

The question before us is whether it is to be said that petitioner entered or · was found in the United States "in violation of any other law of the United States," that is, the quota law or the passport law, and is therefore within the five years' provision of the statute, or whether he comes within the more specific provision of the latter part of the section authorizing deportation within three years after entry because he entered by water at a time and place other than designated by immigration officials, and also without inspection. .

The general language at the beginning of the statute, if it stood alone, might well be thought to be applicable, not only to the petitioner, but to any alien who had entered or was found in this country in violation of any of its laws. It is clear, however, that Congress intended by the subsequent provision to provide a shorter limitation in certain cases. Under familiar rules of construction this subsequent provision is exclusively applicable to cases that come within its terms. The Government contends that it applies only to those aliens who were entitled to admission under a non-filled quota or upon properly viséed passports, but who entered the country under one or more of the conditions which it forbids. We see no reason why the line of limitation should be fixed at those points rather than upon the specific acts covered by the provision itself. Those specific acts are entry (1) by water at a time or place other than designated by the immigration officials; (2) by land at a place other than one designated as a port of entry; (3) at any time not designated by immigration officials; and (4) without inspection. The petitioner · utilized three of these four forbidden means. Consequently, if he was found in this country in violation of the laws of the country—let us say, the laws upon which the Government relies—it was because he had entered by water at a time and place other than designated by the immigration officials, and without inspection. The statute says that one who enters in that. way. shall "at any time within three years after entry * * * be * * * deported." It deals with methods of entry and not the right to enter, and since it was enacted before the passport and quota laws were passed, it is, of course, not limited in its application to aliens who were entitled to admission under those laws, but who entered by the unlawful means which it forbids. It excludes, it seems to us, from the operation of the earlier provisions those aliens who entered the country under the conditions which it specifies, and it is applicable, we think, to

*Rehearing denied March 25, 1929.

the petitioner's case. The writ, therefore, should have been made absolute and the petitioner discharged.

Reversed and remanded.