**UNITED STATES ex rel. COSTEA v. SMITH, District Director of Immigration.**

District Court, N. D. Illinois, E. D.   December 14, 1929.

No. 38250.

David Snow, of Chicago, Ill., for petitioner.

George E. Q. Johnson, U. S. Dist. Atty., and Eugene A. Tappy, Asst. U. S. Dist. Atty., both of Chicago, Ill., for respondent.

WOODWARD, District Judge.   This matter comes up on petition of the relator, John Costea, for a writ of habeas corpus and the return to the writ.

Petitioner, an alien, seeks relief from his detention under a deportation warrant of the Secretary of Labor charging (1) that he entered the United States in violation of the Passport Law (Act May 22, 1918, § 1, 22 USCA § 223), and its extension (Act March 2, 1921, § 1, 22 USCA § 227), and the President's proclamation thereunder, and, that he did not have a properly visaed passport; and (2) that he entered in violation of the Quota Act of 1921 (Act May 19, 1921 [42 Stat. 5]), in that he was not charged to the country of which he is a native.

Petitioner is an alien, a native and resident of Roumania.   On November 24, 1923, he landed surreptitiously by water near Tampa, Fla., without a passport which bore a visa of an American consul; the place of entry not being designated by the Commissioner General of Immigration as a port of entry for aliens.   He entered without being admitted and charged to the country of which he was a native.   That he entered without inspection is conceded.

On November 14, 1928, a warrant for his arrest was issued, making the charges above set forth.   He was arrested, and was given a hearing on the warrant, resulting in the issuance, on January 7, 1929, of a warrant of deportation.   It is conceded that relator is unlawfully in this country.

Two questions are raised and discussed: (1) Does the Passport Law afford any warrant to deport relator; and (2) is the applicable statutory limitation five years or three years?

■  The Passport Act (Act May 22, 1918, § 1, 22 USCA § 223) was a war measure, and expired by its terms when peace was declared on July 2, 1921 (42 Stat. 105), unless Congress had theretofore extended it into times of peace.   Flora v. Rustad (C. C. A.) 8 F.(2d) 335.   By the Act of March 2, 1921, § 1 (41 Stat. 1217 [22 USCA § 227]), making appropriations for the fiscal year ending June 30, 1922, it is provided "that the provisions of the act approved May 22, 1918, shall in so far as they relate to requiring passports and visés from aliens seeking to come to the United States, shall continue in force and effect until otherwise provided by law."   This act, together with the President's proclamation regulating the entry of aliens into the United States by requiring them to have passports issued by the consular service, was in full force and effect at the time relator entered the country.

So much of the act as was extended to peace times does not carry, as one of the consequences of its violation, the deportation of an alien.   The act and the proclamation contain provisions relating to passports and visas which are intended for the guidance of immigration officials.   Neither the act nor the proclamation contain any mandate authorizing deportation.   In the case of United States v. Hughes (D. C.) 24 F.(2d) 707, it is said: "The distinction must be recognized between a law made for the guidance of officials in a direction that passports should be viséd and a law which deports the immigrant because of the absence of such visé."   Upon this branch of the case the court holds that the Passport Act affords no warrant or authority for the deportation of relator.

504

■ The next question is more difficult. Section 19 of the Immigration Act of February 5, 1917 (8 USCA § 155), provides that: "At any time within five years after entry, any alien who at the time of entry was a member of one or more of the classes excluded by law, * * * at any time within three years after entry, any alien who shall have entered the United States by water at any time or place other than as designated by immigration officials, or by land at any place other than one designated as a port of entry for aliens by the Commissioner General of Immigration, or at any time not designated by immigration officials, or who enters without inspection, shall, upon the warrant of the Secretary of Labor, be taken into custody and deported."

By section 2(d) of the Quota Act of May 19, 1921 (42 Stat. 6) it is provided in part: "When the maximum number of aliens of any nationality who may be admitted in any fiscal year under this Act shall have been admitted all other aliens of such nationality, except as otherwise provided in this Act, who may apply for admission during the same fiscal year shall be excluded."

By section 4 of the same act (42 Stat. 7), it is provided: "That the provisions of this Act are in addition to and not in substitution for the provisions of the immigration laws."

The government contends that the five-year limitation applies because relator did not come within the Roumanian quota and therefore "was a member of one or more of the classes excluded by law." In support of its position the government cites and relies upon the case of Hurst v. Nagle (C. C. A.) 30 F.(2d) 346, 348, which applies the five year limitation to nonquota aliens, the court saying that the alien entered in violation of the Quota Law of 1921, and stating the view: "That within the meaning of 8 USCA § 155, he was an alien who at the time of his re-entry was a member of one of the classes excluded by law, and that his case does not come within the provision of that portion of the section which limits to a period of three years after entry the deportation of aliens 'who shall have entered the United States by water at any time or place other than as designated by immigration officials,' or by land, etc., or who enter 'without inspection,' for the classes of aliens referred to in that provision are evidently persons who at the time of entry are such as are entitled to enter, and not persons who are excluded by any provision of the law." The government also relies upon the case of United States v. Smith (C. C. A.) 27 F.(2d) 642, in which the court hold that the five-year limitation applies to an alien stowaway.

The petitioner contends that the latter part of section 155 (8 USCA § 155), referring to the three-year limitation, is special, and is an exception to the general rule announced in the fore part of the same section. The case of Kanaszczyc v. Mathews (C. C. A.) 30 F.(2d) 573, seems to support the contention of petitioner. In that case the court held that the three-year statute, and not the five-year statute, applied to a nonquota immigrant. The authorities, therefore, are not in accord. This court prefers to follow the reasoning and logic of the cases of Hurst v. Nagle, supra, and United States v. Smith, supra. It believes that such a construction accords with the intention of Congress. An examination of section 155 (8 USCA § 155) discloses that it describes three classes, namely, the five-year class, the three-year class, and the no limit class.

As this court views it, there is no conflict between the clauses of section 155 (8 USCA § 155). The three-year limitation is applicable to those aliens who may be otherwise admissible, but who entered by means there declared to be unlawful. An alien may be entitled lawfully to come and remain in the United States, but he may have entered by a prohibited means. If he comes within this class, the three-year limitation applies.

The five-year limitation plainly applies when the alien is a member of a class excluded by law. It is conceded in this case that the alien is here illegally. The Quota Act provides specifically that aliens here in excess of the quota assigned to their native country "shall be excluded."

The judgment will be: Writ of habeas corpus discharged, and petitioner remanded to the custody of the district director of immigration.