**ENGEL et al. v. ZURBRICK, District Director of Immigration.**

No. 5844.

Circuit Court of Appeals, Sixth Circuit.

June 30, 1931.

S. G. Smith, of Detroit, Mich. (Scallen, Watson, Smith & Stevenson, of Detroit, Mich., on the brief), for appellants.

W. G. Comb, of Detroit, Mich. (Gregory H. Frederick, of Detroit, Mich., on the brief), for appellee.

Before DENISON, HICKS, and HICKENLOOPER, Circuit Judges.

DENISON, Circuit Judge.

The alien, John Engel, left his home in Russia (now Poland) in 1909, and came to Montreal. He was there married in 1912 to a widow (now deceased), who was also of Russian nationality, and who had come to Canada in 1911 with her son Stanley, then two years old, who became a member of the Engel family. Their daughter Carolina was born in Montreal in 1914. All the family continued to reside there for about ten years after the marriage. In 1922 or 1923, they all came together to Detroit. They did not have any passports and they entered without inspection, although, as the evidence is, not surreptitiously. In June, 1925, four warrants of arrest were issued, and they were held for deportation. As to the father and both children, the sole charges were that they entered without inspection and were liable to become public charges. In December, 1925, warrants of deportation to Poland were issued in all four cases. As to the father and mother, these warrants recited the additional ground of deportation that they entered without properly visaed passports, as required by the Passport Law of 1918 (22 USCA §§ 223–226) and the President's Proclamation (40 Stat. 1829). The deportation was delayed on account of the difficulty of getting passports for Poland, and it was not until August, 1930, that the Polish government concluded to consent to his (John's) repatriation to Poland, and that, accordingly, the Polish consulate issued to the immigration officers passports for the father and children, the mother having died in the meantime. This habeas corpus proceeding was then brought. The contention made before the District Judge was that the three-year limitation statute applicable to entry without inspection (8 USCA § 155) had expired. After a hearing the writ was denied, and this appeal is brought.

According to our practice in these cases, we have directed that the original certified copy of the departmental proceedings be made a part of the record on this appeal, as an exhibit but without printing; and it has been done.

If we assume that the three-year statute is applicable (we have recently certified that question to the Supreme Court), we find that these aliens testified that their entry was in March, 1922. There is no proof to the contrary, except that in his preliminary statement (on arrest and without counsel) John said it was 1923, and the wife's similar statement tended to support this. He testifies

that this date was a mistake, if he gave it, and brings some—though far from conclusive —supporting testimony. He says he went to work for the Ford Company within a few weeks after his arrival. The record contains a statement by the examining inspector that the records of the Ford Company showed that this man began work in June, 1923; and the conclusion of the inspector and the Department that he entered in 1923, and had been here less than three years, is confessedly based mainly on this supposed record of the Ford Company. No such record was put in evidence, nor did the aliens have any chance to cross-examine or explain. Their original evidence, as to date of entry, satisfied the statutory burden of proof, and, in treating the Ford record as sufficient to overcome their evidence, it is too plain for controversy that, in this respect, they did not have a fair trial, and that the warrants of deportation would have to be vacated for that reason, if for no other.

The findings that the aliens were at the time of entry likely to become public charges are without any support in the evidence, and are arbitrary. Indeed, they seem to be merely pro forma and have not been urged.

It is now conceded that the deportation cannot be justified merely because the aliens, entering in 1922 or 1923, did not have visaed passports. U. S. v. Smith (D. C. Ill.) 36 F.(2d) 503; Id. (C. C. A. 7) 46 F.(2d) 229, 230.

Carolina is now seventeen years old. She was born in Canada. The impropriety of her deportation to Poland is conceded.

The father and stepson had maintained their home in Canada, with an established domicile at Montreal for more than ten years. Beyond any doubt, and under our decision in Gorcevich v. Zurbrick, 48 F.(2d) 1054, April 7, 1931, Canada was the country "whence they came." If Canada had refused to receive them, they might then have been sent to the country of their citizenship; but since, on March 18, 1921, they were not residing in the formerly Russian territory which became Poland, thus ipso facto then becoming Polish citizens, and since they did not file their option for Polish citizenship before September 24, 1924, they lost their right— until then continued—to acquire that status. Treaty of Riga, of March 18, 1921, art. 6. Doubtless Poland, by its statutes or otherwise, could permit a later acquisition, but we do not know how it could compel them to accept. At any rate, it would be for the deportation authorities who sent to Poland residents of the United States who had left what was now Polish territory, ten years before Poland existed, to show a clear right for this action; and this they have not done.[1]

Under all the facts, and if we pass by the question of limitation in all its aspects, we might permit the warrants to be amended so as to direct deportation to be to Canada, as we did in the Gorcevich Case; but this is hardly the "ordinary case" there mentioned. We are inclined rather to follow the action of the Supreme Court in the Wenglinsky Case, 282 U. S. 798, 51 S. Ct. 35, 75 L. Ed. ——, and discharge absolutely. To order deportation to Poland, without effort to send to Canada, was so obviously wrong, not to say oppressive, and the aliens have been kept under restraint so many years, while the children have grown up as residents of the United States and while the deporting powers were trying to overcome the reluctance of the Polish government to repatriate the aliens, that the invalid warrant does not strongly appeal for our discretionary aid. It is not without importance, in such a discretionary matter, that these aliens were not of any excluded class, but—except for the lacking passport—were entitled to enter.

The order below is reversed, and the case remanded, with instructions to discharge the aliens from custody.

[1] We have assumed a former residence in Russian Poland because the record apparently refers to a town near Warsaw. There is another place of substantially the same name in Galician Poland, formerly Austrian territory. If the aliens came from this place, their citizenship did not depend on the treaty of Riga; but considerable search fails to disclose any Austrian-Polish treaty, or any Polish statute which clearly affects the status of a former resident of that territory, who in 1919 had long had a foreign domicile.