**ZACHARIAS v. McGRATH, Atty. Gen. et al.**

Civ. A. 1612–50.

United States District Court
District of Columbia.
May 22, 1952.

Warren W. Grimes, Washington, D. C., for plaintiff.

Charles M. Irelan, U. S. Atty., Ross O'Donoghue, Asst. U. S. Atty., and Raymond E. Baker, Asst. U. S. Atty., all of Washington, D. C., for defendant.

McLAUGHLIN, District Judge.

This matter came before the Court on motion filed by the Attorney General and the Commissioner of Immigration and Naturalization for a judgment on the pleadings in an action brought by Plaintiff for a declaratory judgment on the Findings of the Immigration Authorities by which he was denied readmission to the United States when he attempted to return to this country after a temporary absence abroad.

The Court, upon application of respective counsel, has considered the matter as a dual motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure as provided in Rule 12(c) of the Rules, 28 U.S.C.A. There is no dispute as to the basic facts. They were either admitted by the pleadings, or the pre-trial order, or established during the oral argument.

For convenience the parties are designated as in a trial court. The facts are as follows:

The Plaintiff, a native and citizen of Greece, was lawfully admitted to this country for permanent residence in 1920. He resided here continuously until November, 1936, when he went abroad. In August, 1937, he returned to the United States as

a stowaway; but departed again in September, 1938.

In March, 1939, Plaintiff boarded a United States commercial ship, the S.S. City of Baltimore, at Havre, France, as a stowaway with the intention of obtaining free passage to the United States. When the ship landed at Southampton, England, he was discovered and put ashore. However, the British Immigration authorities returned him to the ship.

The Captain of the ship then put him to work under the Chief Engineer, who assigned him quarters with the crew. The following entry in the log of the S.S. City of Baltimore was made: "Port of Southampton, March 11, 1939, 1:50 P.M. John Zacharias, Greek stowaway was found and put ashore but was returned to the ship by immigration authorities having boarded ship at Havre, March 10, 1939. Put to work under Ch.Engr. D. A. Beaton, Ch.Engr. F. E. Cross, Master."

At the Port of New York, Plaintiff was taken into custody on exclusion charges. A Board of Special Inquiry determined that he should be excluded from admission to the United States. The grounds for said Board's determination, so far as pertinent here, were (1) that he did not possess an immigration visa, and (2) that he was a stowaway. Plaintiff was permitted to land, however, and at a later date he was released on bond conditioned upon his appearing when called for deportation.

Plaintiff filed an appeal. The Board of Immigration Appeals in entering its decision held that Plaintiff was eligible for consideration as an alien who after a temporary absence abroad was returning to an unrelinquished domicile in the United States of seven (7) consecutive years as provided in Sec. 13(b) of the Act of May 26, 1924, as amended, Title 8 U.S.C.A. § 213(b)[1]; also in Title 8 U.S.C.A. § 136(p) [2] and 8 Code of Federal Regulations (C.F.R.) part 132.1 (formerly Sec. 132.1 of Immigration Regulations[3]). However, favorable consideration under said statutory provisions was denied and the Board affirmed the exclusion order. In said order of affirmance the Board limited the exclusion charges against the Plaintiff to two grounds, namely, 1) that he did not possess an unexpired immigration visa at the time of his arrival in New York on March 21, 1939, and 2) that he was a stowaway at the time of his arrival.

Later, the Board of Immigration Appeals denied a motion for reconsideration and the Plaintiff then filed this action against the Attorney General and the Commissioner of Immigration and Naturalization.

1. "Readmission of legally admitted aliens who have temporarily departed without visas. In such classes of cases and *under such conditions as may be by regulations prescribed* immigrants who have been legally admitted to the United States and who depart therefrom temporarily may be admitted to the United States without being required to obtain an immigration visa." 8 U.S.C.A. § 213(b). (Italics supplied.)

2. "The following classes of aliens shall be excluded from admission into the United States: * * * Aliens returning after a temporary absence to an unrelinquished United States domicile of seven consecutive years may be admitted in the discretion of the Attorney General, and *under such conditions as he may prescribe.*" 8 U.S.C.A. § 136(p). (Italics supplied.)

3. Aliens returning to unrelinquished domicile; domicile defined. Aliens returning after a temporary absence to an unrelinquished United States domicile of seven consecutive years may be admitted in the discretion of the Attorney General and under such conditions as he may prescribe. In such case satisfactory proof of domicile in the United States for seven consecutive years, and of departure therefrom with the intention of returning thereto, will be exacted. Every case of exclusion for any cause in which the alien has given such proof, shall be promptly brought by the official in charge to the attention of the Attorney General, through the usual official channels, with a complete report of the reasons for the alien's exclusion and of the proof which has been offered of continuous and relinquished domicile, together with a statement of the duration of the absence. Domicile, for the purposes of this section, means that place where a person has his true, fixed, and permanent home, and principal establishment, to which, whenever he is absent, he has the intention of returning. 8 C.F.R.132.1, 1949 Ed.

424

Plaintiff's basic contention is that there was error in law in holding him excludable on the ground that upon his arrival in March, 1939, he was not in possession of an immigration visa. He asserts that he is a non-quota immigrant as defined in Sec. 204 (b) of Title 8 U.S.C.A. Under said section the term "non-quota immigrant" includes (b) "An immigrant previously lawfully admitted to the United States, who is returning from a temporary visit abroad".

The basis of Plaintiff's contention is that as a member of the class of persons described in said statute he is immune from the requirement of possession of an immigration visa as a requirement for entry into the United States. This claim of statutory immunity is based upon Title 8 U. S.C.A. § 213(b), supra, and the regulation, (8 Code of Federal Regulations) prescribed pursuant thereto.

Plaintiff claims that Section 13(b) of the Immigration Act of 1924, 8 U.S.C.A. § 213(b), supra, was a substitute for the general discretion given the Attorney General under the 7th Proviso of the 1917 Act, 8 U.S.C.A. § 136(p), supra. He asserts that the regulation prescribed thereunder, 8 C.F.R. 132.1, supra, limits the inquiry of the Board to only the determination of two things, namely, 1) "satisfactory proof of domicile in the United States for seven consecutive years", and 2) "of departure therefrom with the intention of returning thereto"; that both of these requirements are new; and that the discretion given in the 1917 Act is terminated by the 1924 Act.

Plaintiff further claims he has satisfied the only two conditions allegedly imposed by the regulation and that the Attorney General is not given any power to revert to the full discretion granted him under the Act of 1917, 8 U.S.C.A. § 136(p), supra, or to impose in an individual case, conditions which have not been formally prescribed for the class as a whole. It is Plaintiff's position that the Attorney General's full discretion, outside of those conditions, died with the Act of 1924, 8 U.S.C.A. § 213(b), supra.

■ It cannot be inferred that Congress intended to eliminate or modify the discretion of the Attorney General. On the contrary it appears clear that the provisions of the Immigration Act of 1924 are an addition to and not a substitution for the provisions of the general immigration laws and are enforced as a part of such laws. 8 U.S.C.A. § 223.

The fact that Plaintiff had acquired a domicile in the United States by a previous lawful admission does not give him a status which entitled him as a matter of right to re-enter this country after a temporary absence abroad.

It is true that an alien who has become assimilated in our society stands in several respects on an equal footing with a citizen of the United States in so far as his property and his liberty are concerned. The United States Supreme Court has held that the Constitution assures him a large measure of equal economic opportunity. Yick Wo v. Hopkins, 1886, 118 U.S. 356, 6 S. Ct. 1064, 30 L.Ed. 220, 229; Truax v. Raich, 1915, 239 U.S. 33, 36 S.Ct. 7, 60 L. Ed. 131; Takahashi v. Fish and Game Comm., 1948, 334 U.S. 410, 68 S.Ct. 1138, 92 L.Ed. 1478; that a writ of habeas corpus may be invoked to protect his personal liberty. Nishimura Ekiu v. U. S., 1892, 142 U.S. 651, 12 S.Ct. 336, 35 L.Ed. 1146; that in criminal proceedings the protection of the Fifth and Sixth Amendments must be accorded him. Wong Wing v. U. S., 1896, 163 U.S. 228, 16 S.Ct. 977, 41 L.Ed. 140; and that his property cannot be taken (provided he is not an enemy alien) without just compensation. Russian Volunteer Fleet v. U. S., 1931, 282 U.S. 481, 51 S. Ct. 229, 75 L.Ed. 473.

However, certain other rights possessed by citizens have been withheld from aliens, such as the right to be elected to membership in the Congress,[4] or the right to be admitted to the United States.

■ Admission of aliens into the United States has long been recognized to be a matter of governmental privilege and tolerance based on the sovereign's consent and upon conditions which it cares to im-

4. U.S.Const. Art. 1, sec. 2, cl. 2; sec. 3, cl. 3.

pose. The powers of the United States to exclude aliens, to regulate their admission, to prescribe the terms and conditions on which they may remain and to provide for their deportation are plenary powers inherent in the sovereignty and essential to the self-preservation of the United States as an independent nation. Nishimura Ekiu v. U. S., supra, Fong Yue Ting v. U. S., 1893, 149 U.S. 698, 13 S.Ct. 1016, 37 L.Ed. 905. Japanese Immigrant Case (Yamataya v. Fisher), 1903, 189 U.S. 86, 23 S.Ct. 611, 47 L.Ed. 721 and cases cited therein.

This power and authority of the United States as an attribute of its sovereignty to either prohibit or regulate immigration of aliens has been vested in the political departments of the Government, to be exercised by Act of Congress and to be executed by the executive branch of the Government.[5]

In the exercise of its power, Congress has passed acts of exclusion and restriction over the general subject matter of admission of aliens into this country and has delegated full authority and power to the Department of Justice under the Attorney General[6] to enforce its acts. 8 U.S.C.A. § 131.

The actual administration of these acts is effected through a bureau of immigration under the charge of a Commissioner of Immigration and Naturalization, who is appointed by the President by and with the advice and consent of the Senate, and who is an officer in the Department of Justice, performing all his duties under the direction of the Attorney General. 8 U.S.C.A. §§ 101, 102.

Aliens who enter the United States must do so in accordance with the statutory provisions enacted by Congress found in Title 8 of the United States Code Annotated.

Congress has provided in express terms that no immigrant shall be admitted to the United States except with its permission when granted upon certain conditions. 8 U.S.C.A. § 213. Some of these conditions it has set forth in its Acts; others it has left to the discretion of the Attorney General or authorized him to prescribe by regulation.

Specific and detailed regulations have been made by the Immigration Authorities for carrying the statutory provisions into effect. These regulations are codified under Title 8 of the Code of Federal Regulations of the United States.

An elaborate system for the identification of arriving immigrants has been established, and, as a part of this system, an alien is required to possess and to present on arrival an unexpired immigration visa to the Immigration Officials under Section 13(a) of the Immigration Act of 1924, 8 U.S.C.A. § 213(a).

Subdivision (b) of Section 13 allows an immigrant, who has been legally admitted to the United States, and who departs temporarily, to be re-admitted without being required to obtain an immigration visa *under such conditions as may be by regulation prescribed*. 8 U.S.C.A. § 213(b). (Italics supplied.)

On the date of the Plaintiff's arrival the regulations in force provided that no immigrant, whether he was a quota immigrant or a non-quota immigrant, should be admitted to the United States unless such immigrant presented an unexpired immigration visa to the proper immigration official at the port of arrival, except in the case of an alien who was previously legally admitted to the United States for permanent residence, and who held an unexpired permit to re-enter which was issued pursuant to Section 10 of the Immigration Act of 1924, 8 U.S.C.A. § 210. 8 C.F.R. 3.11, 3.37.

Under the provisions of Section 10 an immigrant lawfully in the country who de-

5. U.S.Const. Art. 1, sec. 8, cl. 4 "To establish an uniform Rule of Naturalization".

6. At the time of Plaintiff's arrival this authority was delegated to Department of Labor under the Secretary of Labor. Reorganization Plan Number V, effective June 14, 1940, 5 U.S.C.A. following section 133t, transferred the Immigration and Naturalization Service of the Department of Labor and its functions to the Department of Justice to be administered under direction and supervision of the Attorney General.

sires to depart temporarily may make application to the Commissioner of Immigration and Naturalization for a permit to reenter the United States. If the Commissioner finds that the alien has been legally admitted to the United States and has made the application in good faith, the Commissioner is authorized, with the approval of the Attorney General, to issue the permit which the alien upon his return shall surrender to the Immigration Officer at the port of inspection. 8 U.S.C.A. § 210(a, b).

The holder of a re-entry permit possesses no additional rights to re-enter except that he is placed in the non-quota class. His permit is accepted as evidence of the temporary character of his departure but does not vest in him any right to enter the United States if he is subject to exclusion on any other ground under the Immigration laws. Hansen v. Haff, 1934, 291 U.S. 559, 54 S.Ct. 494, 78 L.Ed. 968.

■ The permit is merely *prima facie* evidence of his status as a resident alien and is accepted as a substitute for an immigration visa to satisfy the statutory requirement. Hamburg-American Line v. U. S., 1934, 291 U.S. 420, 54 S.Ct. 491, 78 L. Ed. 887.

■ The very purpose of requiring the visa or permit is to facilitate his arrival and to avoid the necessity of an investigation to verify his status. Hamburg-American Line v. Elting, 2 Cir., 1934, 73 F.2d 272.

■ If an alien voluntarily leaves this country, he is subject to all the provisions of the immigration law whenever he seeks to return. Lapina v. Williams, 1914, 232 U.S. 78, 34 S.Ct. 196, 58 L.Ed. 515. Lewis v. Frick, 1914, 233 U.S. 291, 34 S.Ct. 488, 58 L.Ed. 967. Bendel v. Nagle 9 Cir., 1927, 17 F.2d 719.

■ Thus, regardless of other qualifications the statutes clearly require that a non-quota immigrant seeking re-admission to the United States have either an unexpired immigration visa or an unexpired re-entry permit. Possession of one or the other of these two documents is a condition precedent to his admission.

U. S. ex rel. Polymeris v. Trudell, 1931, 284 U.S. 279, 52 S.Ct. 143, 76 L.Ed. 291, affirming 2 Cir., 1931, 49 F.2d 730. U. S. ex rel. De Vita v. Uhl, 2 Cir., 1938, 99 F.2d 825, certiorari denied 306 U.S. 631, 59 S.Ct. 464, 83 L.Ed. 1033 (1939). Rash v. Zurbrick, 6 Cir., 1935, 75 F.2d 934. U. S. ex rel. Lamp v. Corsi, 2 Cir., 1932, 61 F.2d 964.

In view of the conflicting ruling expressed earlier by the Court of Appeals for the First Circuit in Johnson v. Keating, 1926, 17 F.2d 50, the Supreme Court granted certiorari in U. S. ex rel. Polymeris v. Trudell, supra. The Johnson case held that a non-quota immigrant returning from a temporary visit abroad was entitled to admission if he could establish his right before the immigration authorities, and that an immigration visa or a return permit was intended merely as convenient, but not essential, evidence to establish such right.

Justice Holmes in delivering the opinion of the Court in the Polymeris case stated [284 U.S. 279, 52 S.Ct. 144]: "The relators have no right to enter the United States unless it has been given to them by the United States. The burden of proof is upon them to show that they have the right. * * * By section 13 and the regulations under it, * * * a returning alien cannot enter unless he has either an immigration visa or a return permit. The relators must show not only that they ought to be admitted, but that the United States by the only voice authorized to express its will has said so. *Obviously it has not done so * * *.*" (Italics supplied.)

In U. S. ex rel. De Vita v. Uhl, supra, an alien who had been lawfully admitted for permanent residence went abroad for a temporary visit. When he returned, he entered the United States surreptitiously without an immigration visa or a re-entry permit. The Court held that even assuming the alien was returning to an unrelinquished domicile in this country, he could not enter lawfully unless he had either a re-entry permit or an unexpired immigration visa. The Court said, "De-

spite the fact of his previous lawful residence here, he was an alien immigrant within the definition of that term * * *. He has failed to show that he was within any of the exceptions dispensing with his need for an immigration visa. It is immaterial that he might, perhaps, have secured a re-entry permit which would have done away with the need of an immigration visa for he had no re-entry permit."

Applying the foregoing principles it appears firmly established that the failure of a non-quota immigrant to have either an immigration visa or a re-entry permit in any case is a failure to comply with the immigration law. In the circumstances the Court will not disturb the Board's findings to that effect.

Plaintiff also contends that it was error to hold him excludable as a stowaway. He avers that there was no substantial evidence in the record to support the charge of being a "stowaway"; that the record shows he boarded the ship at Southampton with the knowledge and consent of the ship's officers; that he actually became a member of the crew of the ship; and that under the regulation relied upon by defendants "a so-called 'workaway' must have been a stowaway sometime on the trip arriving at our ports."

Section 136 (*l*) of Title 8 U.S.C.A. provides: "The following classes of aliens shall be excluded from admission into the United States: * * * (*l*) Stowaways, except that any such stowaway, if otherwise admissible, may be admitted in the discretion of the Attorney General".

The regulation published under the authority of the statute so far as pertinent here provides: "Stowaways. Aliens arriving at seaports of the United States as 'stowaways' or alien 'stowaways' who arrive as 'workaways' shall be held for examination by a board of special inquiry." 8 C.F.R. 110.50, 1949 Ed.

By his own admission Plaintiff pleads that he boarded the ship at Havre, France, as a stowaway with the intention of obtaining free passage to the United States. There being no statutory definition of stowaway the Board's determination under the circumstances was justified. Cf. United States ex rel. Candreva v. Smith, 7 Cir., 1928, 27 F.2d 642. The mere failure of the Attorney General to exercise his discretionary power favorably toward Plaintiff in the making of this determination does not constitute a violation of any constitutional right or an abuse of discretion. It is well settled that the Courts cannot direct or control the discretion conferred by Congress upon an executive or an administrative agency. Marbury v. Madison, 1803, 1 Cranch 137, 2 L.Ed. 60. Louisiana v. McAdoo, 1914, 234 U.S. 627, 34 S.Ct. 938, 58 L.Ed. 1506. Phelps Dodge Corp. v. National Labor Relations Board, 1941, 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271. American Power & Light Company v. Securities and Exchange Commission, 1946, 329 U.S. 90, 67 S.Ct. 133, 91 L.Ed. 103. Ludecke v. Watkins, 1948, 335 U. S. 160, 68 S.Ct. 1429, 92 L.Ed. 1881. U. S. ex rel. Knauff v. Shaughnessy, 1950, 338 U.S. 537, 70 S.Ct. 309, 94 L.Ed. 317. Judicial action on review under the Administrative Procedure Act is permissible where the Board's determination under its discretionary power has been arbitrary, capricious, or otherwise not in accordance with law. 5 U.S. C.A. § 1009(e). But an examination of the record does not disclose any prejudicial, arbitrary or unfair denial of Plaintiff's rights. The presumption of regularity of official acts of public officials in the absence of evidence to the contrary is applicable in the present instance, and supports the validity of the official acts complained of. In the circumstances the Court determines that the determination by the Board that Plaintiff was a stowaway is not violative of any constitutional right of Plaintiff or an abuse of discretion.

Counsel for Defendant will prepare proposed judgment in accordance with the foregoing.