Ex parte ANDAL.

United States District Court,
S. D. New York.

Aug. 3, 1953.

Rosauro Gomez, Brooklyn, N. Y., for petitioner.

J. Edward Lumbard, U. S. Atty., New York City, for the United States, Harold J. Raby, Asst. U. S. Atty., New York City, Lester Friedman, Atty., Immigration & Naturalization Service, Dept. of Justice, New York City, of counsel.

WEINFELD, District Judge.

This is a habeas corpus proceeding brought on behalf of Quirino Panes, which seeks to overturn an order deporting him to the Philippine Islands.

Panes is a citizen and subject of the Philippines. He first entered the United States on August 2, 1945, as a seaman and shipped out again in about three weeks. Between that date and 1948, he made "about 10 entries into the United States as a seaman" when he "remained for short periods of two or three weeks and then reshipped."[1]

In March, 1948, he was admitted again as a seaman for the purpose of "reshipping foreign" within 29 days.[2] But instead of doing so, he remained in this country, neither applying for nor obtaining an extension of his temporary stay. On October 9, 1950, deportation proceedings were instituted against him on the ground that he had remained in the United States for a longer time than permitted by law. After two hearings and an appeal, which focused largely on Panes' application for discretionary re-lief, he was ordered deported upon the ground set forth in the warrant of arrest.[3] The contentions now made to resist the order of deportation are advanced here for the first time.

The argument on Panes' behalf is basically as follows: that he entered the United States in 1945, as a "national" of this country, for permanent residence; that, although he became an alien on July 4, 1946, when the Philippine Islands were declared independent, his re-entry in March 1948 was as a permanent resident alien returning to "an unrelinquished domicile"; and that he could not be deported for having remained here longer than 29 days, since he was entitled to remain here indefinitely.[4]

This argument is based upon the assumption that an amendment in 1939[5] to § 8 of the Act of 1934[6] gave the same status to citizens of the Philippines that they had enjoyed before 1934, i. e., that of United States "nationals." The government contends that this is an incorrect construction of the statute.

I need not reach this question, however, for the antecedent difficulties in petitioner's position are decisive against sustaining the writ.

Concededly, Panes was an alien after July 4, 1946, so that the immigration authorities had jurisdiction to institute deportation proceedings against him. At no time during such proceedings was the legal point relative to Panes' "nationality" and alleged permanent residence in the United States as much as hinted at.[7]

There is not an iota of evidence in the record that prior to March 1948 Panes established a permanent residence here, or, if he did, that he had not abandoned it be-

---

1. Transcript of Hearing of June 22, 1951, p. 3.

2. Ibid.

3. An application for voluntary departure was granted, but Panes did not avail himself of the opportunity.

4. For authority that Panes might still be deportable, assuming the correctness of all he now asserts, see United States ex rel. De Vita v. Uhl, 2 Cir., 99 F.2d 825; Zacharias v. McGrath, D.C., 105 F.Supp. 421, 426–427.

5. Act of August 7, 1939, § 2, 53 Stat. 1230.

6. Act of March 24, 1934, 48 Stat. 462–63, 48 U.S.C. § 1238.

7. Cf. Kjar v. Doak, 7 Cir., 61 F.2d 566; Ex parte Keizo Kamiyama, 9 Cir., 44 F. 2d 503, 505.

fore that date.[8] Indeed, all the evidence is to the contrary: Panes unequivocally testified that between his first entry in 1945 and his last entry in 1948 he entered as a seaman about ten times, the last time on a voyage from India, that he remained for short periods of two or three weeks and that he then reshipped. The first time that he was in the United States for anything more than a stop-over between trips was in March of 1948, more than a year and a half after he could claim status as a "national" under the theory now advanced. And even then, according to his own testimony, he was again admitted for a temporary period not to exceed 29 days and intended to reship foreign within that period.

Petitioner seems to suggest that because Panes was, as he now contends, a "national," he necessarily entered for permanent residence in 1945. Authority for this view is sought in a decision by a Hearing Officer, in which he is quoted as saying that citizens of the Philippines "whose residence in this country began prior to May 1, 1934 * * * and who had resided here continuously since that time, are considered to have been lawfully admitted for permanent residence." [9] Assuming arguendo that this is correct, assuming further that Panes was a "national" when he entered and that the rule applicable to Filipinos before 1934 applies to Panes' entry in 1945, there is, as I have noted, a complete absence of evidence that Panes "resided here continuously since" 1945.

The warrant of arrest charged that after being admitted as a seaman for a temporary period Panes remained here for a longer time than permitted. The burden was upon him to show the "manner" of his entry in March 1948; [10] this includes whether he was admitted as a seaman for only 29 days or whether he was admitted for permanent residence.[11] Since he failed to sustain the burden that he was a permanent resident alien seaman returning to his acquired domicile, the order to deport him was proper.

Accordingly, the writ is dismissed and the relator is remanded to the custody of the District Director of Immigration and Naturalization.

Settle order on notice.

---

**8.** See 8 U.S.C.A. § 1101(a) (31), defining "permanent" as a "relationship of continuing or lasting nature, as distinguished from temporary * * * *"; 8 U.S.C.A. § 1101(a) (33), defining "residence" as "the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent." See also Toy Teung Kwong v. Acheson, D.C., 97 F. Supp. 745, place of general abode is a question of fact; Savorgnan v. United States, 338 U.S. 491, 504, 505, 70 S.Ct. 292, 94 L.Ed. 287, distinguishing between "actual residence" and "permanent residence" or "domicile."

**9.** In re Simplicio Bautista Alison, A 5–940430, Buffalo, N. Y., April 11, 1951. Cf. 8 C.F.R. 4.2(g), presumption of lawful admission for permanent residence, for Filipino citizens who entered prior to May 1st, 1934, "unless the alien abandoned his status as a lawful permanent resident * * *."

**10.** See 8 U.S.C.A. § 1361, former § 221; United States ex rel. Lamp v. Corsi, 2 Cir., 61 F.2d 964.

**11.** Cf. United States ex rel. Catches v. Day, 2 Cir., 45 F.2d 142, affirmed, 283 U.S. 51, 51 S.Ct. 359, 75 L.Ed. 835.