**FANG-SUI YAU, Petitioner,**

v.

**Ernest E. GUSTAFSON, Jr., Respondent.**

**No. CV 84–9509 AWT (T).**

United States District Court,
C.D. California.

Dec. 19, 1985.

**1516**

Yee-Jen Shuai, Alhambra, Cal., for petitioner.

Robert C. Bonner, U.S. Atty., Frederick M. Brosio, Jr., Asst. U.S. Atty., Chief, Civ. Div., Lawrence W. Chamblee, Sp. Asst. U.S. Atty., Los Angeles, Cal., for respondent.

## MEMORANDUM ORDER ADOPTING MAGISTRATE'S RECOMMENDATIONS

TASHIMA, District Judge.

■ This is a petition for writ of habeas corpus by a stowaway who is under imme-diate threat of deportation. This Court has jurisdiction under 8 U.S.C. § 1105a(a)(9) and (b), which respondent does not challenge. Before the Court for review, pursuant to 28 U.S.C. § 636(b)(1), are the Magistrate's report and recommendation (the "initial report") and supplemental report and recommendation, copies of which are appended hereto. I have reviewed the file herein, including the certified administrative record of the Immigration and Naturalization Service ("INS"), and have made a *de novo* determination of those portions of the initial report to which objection has been made. Because I agree with the Magistrate's reliance on and analysis of *Yiu Sing Chun v. Sava*, 708 F.2d 869 (2d Cir.1983), I approve and adopt her recommendation that the writ issue.[1] I add only the following.

In his objections to the Magistrate's initial report, respondent argues, in essence, that a stowaway's right to apply to the INS district director for asylum, a procedure in effect prior to the enactment of the Refugee Act of 1980, *see INS v. Stanisic*, 395 U.S. 62, 89 S.Ct. 1519, 23 L.Ed.2d 101 (1969), is sufficient to fulfill the purposes and provisions of the Refugee Act. In addition to the observations made in the Magistrate's supplemental report, with respect to this contention, the Court notes that the INS' own regulations do not support this contention:

As we have noted above, INS regulations promulgated under the Refugee Act do not distinguish between stowaways and other aliens in providing for an exclusion hearing after the District Director has denied an asylum application, 8 C.F.R. 208.9, 208(f)(3), nor, read as a whole, does the agency's asylum procedure make any distinction among applicants for asylum. Nor do internal INS procedures ("Operations Instructions") qualify in any way the generalization

---

1. I do not view the Second Circuit's analysis in *Yiu Sing Chun* as a "compromise"; rather, as also indicated by the Magistrate, it is a rational harmonization of the two statutes, giving effect to both.

that an "alien shall be informed of his/her right to renew the asylum request ... in subsequent exclusion or deportation proceedings." INS O.I. 208.14, *reprinted in* 4 C. Gordon & H. Rosenfeld, Immigration Law and Procedure 23–156.20 (rev. ed. 1982).

*Yiu Sing Chun,* 708 F.2d at 875 (footnote omitted). In the omitted footnote, the Second Circuit observed that:

Stowaway status is *not* one of the reasons for denying an asylum application listed in the Federal Register notice or the regulations. *Id.* [45 Fed.Reg.] at 37,-392; 8 C.F.R. 208.8(f)(i)–(vi).

*Id.* at 875 n. 19 (emphasis in the original).

As noted in the Magistrate's initial report, petitioner claimed that as a stowaway-asylee he was entitled to a due process hearing on his asylum claim. The contention rests primarily on the analysis in *Yiu Sing Chun* of the requirement of a due process hearing "to determine whether applicants for asylum are, in fact, refugees within the meaning of the Act." 708 F.2d at 877 (footnote omitted). Here, although petitioner was given a hearing before an immigration judge ("IJ") and found to be a refugee, the Board of Immigration Appeals ("BIA") concluded that the IJ was without jurisdiction and ordered all proceedings terminated.

■ In his objections to the Magistrate's initial report, respondent insists that a stowaway has no constitutional right to due process. Respondent arrives at that position by relying first on the holding in *Nishimura Ekiu v. United States,* 142 U.S. 651, 660, 12 S.Ct. 336, 338, 35 L.Ed. 1146 (1892), that with respect to unadmitted aliens, "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law." (Citation omitted.) *Accord, Shaughnessy v. Mezei,* 345 U.S. 206, 212, 73 S.Ct. 625, 629, 97 L.Ed. 956 (1953). Next, respondent distinguishes *Landon v. Placencia,* 459 U.S. 21, 32, 103 S.Ct. 321, 329, 74 L.Ed.2d 21 (1982), which held that constitutional due process applies to an ex-clusion proceeding. The distinction is bottomed on the Immigration and Nationality Act's provisions that stowaways have no right to a hearing under *that* Act. *See* 8 U.S.C. §§ 1225(b) and 1323(d). This argument, however, completely ignores rights granted to refugees under treaty and by the Refugee Act. Giving effect to these enactments, I agree with the Second-Circuit that both treaty and statutory rights grant to an asylee-refugee a protectible interest which is sufficient to trigger procedural due process requirements. *See Yiu Sing Chun,* 708 F.2d at 876–77 and nn. 25–27.

■ Petitioner's rights under the Refugee Act are limited to those expressly provided for in that Act. The IJ found that petitioner was a "refugee"—that he had a "well-founded fear of persecution." 8 U.S.C. § 1101(a)(42)(A). On the other hand, he also concluded that this was not a proper case in which the discretion to grant asylum should be exercised in favor of petitioner. Both sides appealed to the BIA. As indicated earlier, the BIA vacated the decision of the IJ and ordered the exclusion proceedings terminated for lack of jurisdiction. It did not reach the merits. Therefore, the matter must be remanded for the two questions to be resolved on the merits: (1) Is petitioner a "refugee" within the meaning of the Refugee Act; and (2) If so, how should the Attorney General exercise his discretion as to whether or not to grant petitioner asylum under § 208(a) of the Refugee Act of 1980, 8 U.S.C. § 1158(a). *See, e.g., Garcia-Ramos v. INS,* 775 F.2d 1370, 1373 (9th Cir.1985); *Yiu Sing Chun,* 708 F.2d at 876.

IT IS ORDERED that the writ of habeas corpus issue and that the matter be remanded for further proceedings not inconsistent with this Order and the Magistrate's reports and recommendations.

## REPORT AND RECOMMENDATION OF MAGISTRATE

### October 8, 1985

VENETTA S. TASSOPULOS, United States Magistrate.

This Report and Recommendation is submitted pursuant to the provisions of 28

U.S.C. § 636(b)(1)(B) and General Order No. 194 of the United States District Court for the Central District of California.

On December 13, 1984, petitioner filed two petitions for writs of habeas corpus, civil case numbers 84–9509–AWT(T) and 84–9510–Kn(T). Also on that date, petitioner filed an *ex parte* application for a temporary restraining order. No opposition being offered by defense counsel, the Magistrate heard petitioner's motion and signed an order to show cause and stay of deportation in the case. The Magistrate also found that petitioner's counsel had not exhausted his administrative remedies with the Board of Immigration Appeals. Counsel was advised to voluntarily dismiss one of his writs of habeas corpus and to file an amended petition for writ of habeas corpus no later than January 7, 1985.

Petitioner voluntarily dismissed civil action number 84–9510–Kn(T) on December 28, 1984. Thereafter, the government submitted its Return to petitioner's habeas corpus petition, and petitioner filed his traverse. Oral argument regarding petitioner's order to show cause and stay of deportation was set for hearing on February 19, 1985.

After the hearing, the Magistrate ordered additional briefing on the petitioner's entitlement to a hearing before an immigration judge. The matter was thereafter deemed submitted.

## BACKGROUND

Petitioner, Fang-Sui Yau, arrived at the port of Los Angeles on the vessel *Sealand Developer* on September 1, 1983. (Administrative Record, hereinafter "A.R.," 80). By petitioner's own admission, his presence on the vessel was that of a "stowaway." (A.R. 116).

Upon arrival in the United States, petitioner was detained by the Immigration and Naturalization Service (hereinafter "INS") and afforded an exclusion hearing before an immigration judge. (A.R. 90–

233). Petitioner requested political asylum, claiming that he would be persecuted if returned to his native land, the People's Republic of China. Petitioner based his claims of persecution on allegations that he was discriminated against in China due to his status as a member of a landowner class family and the son of an anti-revolutionary. (A.R. 103–105). Hearings were held between March 6, 1984 and April 30, 1984. (A.R. 90–94, 95–117, 118–130, 131–140, 141–165, 166–190 and 191–233). Petitioner also claimed to have engaged in several anti-government activities, including assistance to several individuals who successfully escaped mainland China. (A.R. 109–110, 189–190). Petitioner testified that he had attempted to escape China before, unsuccessfully, and that such an attempt resulted in his imprisonment for one year. (A.R. 112–113).

Petitioner's second attempt to escape China was successful. He fled to Hong Kong where he resided underground for more than a year. (A.R. 114–117, 199). Petitioner explained that he did not seek to apply for political asylum at the United States Consular Office in Hong Kong because he was not aware that such an office existed and because he feared the Hong Kong authorities would capture him and would return him to China. (A.R. 116, 194). After residing in Hong Kong without legal status, petitioner stowed away on the *Sealand Developer* with the intent of applying for political asylum upon entry into the United States. (A.R. 200).

After the hearings and due consideration of the evidence presented, the immigration judge issued a decision finding petitioner excludable as a stowaway. (A.R. 80–89). While finding that the petitioner was excludable and subject to deportation, the immigration judge also found that petitioner had established a well founded fear of persecution if returned to the People's Republic of China. (A.R. 87, 89). Therefore, the immigration judge determined that petitioner should be deported to any country

which would accept him other than the People's Republic of China. (A.R. 89).

The Board of Immigration Appeals vacated the decision of the immigration judge and terminated exclusion proceedings. (A.R. 2–3). The Board found that since petitioner was a stowaway and not entitled to a hearing before an immigration judge, the immigration judge did not have jurisdiction over petitioner's asylum claim. (A.R. 3).

## THE ISSUE

The issue before the Court is one of first impression, there being no Ninth Circuit Court of Appeals precedent. The essential question is whether petitioner, whose status as a stowaway normally would preclude a hearing before an immigration judge, pursuant to 8 U.S.C. § 1323(d) is, nevertheless, entitled to such a hearing under the Refugee Act of 1980, 8 U.S.C. § 1158(a).

Title 8 U.S.C. § 1323(d) provides in pertinent part: The provisions of Section 1225 of this title for detention of aliens for examination before special inquiry officers * and the right of appeal provided for in Section 1226 of this title shall not apply to aliens who arrive as stowaways and no such alien shall be permitted to land in the United States, except temporarily for medical treatment, or pursuant to such regulations as the Attorney General may prescribe for the ultimate departure or removal or deportation of such aliens from the United States.

A review of the statute's legislative history reveals that the expansive changes which were enacted with the passage of the 1952 legislation imposed penalty provisions in connection with stowaways.

Section 273(d) provides a penalty for failure to detain a stowaway on board a vessel or aircraft prior to inspection, or after inspection if there is an order to do so, as well as a penalty for failure to deport such stowaway. Section 273(e) imposes a penalty for failure to deport such stowaway. Section 273(e) imposes a penalty of $500 on a carrier which has on board a stowaway upon arrival at a port of entry, which penalty may be mitigated under certain conditions.

H.R.Rep. No. 1365, 82nd Cong.2d Sess., *reprinted* in 1952 U.S.Code Cong. & Ad. News 1653, 1724.

As part of the penalty provisions, Congress determined that stowaways should not have the right to an exclusion hearing before an immigration judge. Under this 1952 legislation, alien stowaways were first deemed excludable.

"D. Stowaways

Stowaways are excluded absolutely, whereas, at present, the Attorney General has discretionary authority to admit stowaways."

H.R.Rep. No. 1365, *supra, reprinted* in 1952 U.S.Code Cong. & Ad.News, 1653, 1703.

In this case, the government has interpreted 8 U.S.C. § 1323(d) as denying a stowaway not only his right to an exclusion hearing before an immigration judge, but also denying a stowaway's right to raise his asylum claim before an immigration judge.

Crewmen and stowaways have always been considered special cases under the immigration laws because they arrive at ports of entry without having undergone the usual procedure for admission under the immigration laws, the procedure of applying for a visa at an American consular post abroad. Hence, Congress enacted special procedures for crewmen and stowaways seeking entrance to the United States. The statute permits the district director to exclude crewmen and stowaways summarily.

.    .    .    .    .

---

* The term special inquiry officer is used interchangeably with the term immigration officer.

Both terms refer to the same officer. See 8 C.F.R. § 1.1(1)

If a crewman desires to present an asylum claim, it is also within the discretion of the district director to grant or deny asylum. *INS v. Stanisic,* 395 U.S. 62, 89 S.Ct. 1519, 23 L.Ed.2d 101 (1969)."

Respondent's Memorandum of Points and Authorities, p. 4.

Title 8 U.S.C. § 1323(d) and the government's interpretation of the statute are squarely in conflict with the provisions for the admission of refugees in the Refugee Act of 1980, Pub.L. 96–212, 94 Stat. 109.

The purpose of the Refugee Act of 1980 is stated as follows:

> The objectives of this Act are to provide a permanent and systematic procedure for the admission to this country of refugees of special humanitarian concern to the United States and to provide comprehensive and uniform provisions for the effective resettlement and absorption of those refugees who are admitted.

The Refugee Act of 1980, § 101(b).

The Act further requires the Attorney General to "establish a procedure for an alien physically present in the United States or at a land border or port of entry, *irrespective of such alien's status,* to apply for asylum." [Emphasis added.] 8 U.S.C. § 1158(a).

Petitioner interprets both the general purposes of the Refugee Act of 1980 as well as the statute's directory language as providing a stowaway a right to apply for asylum in the same manner as any other alien applying for political asylum, i.e., with a right to a hearing before an immigration judge.

Respondent, on the other hand, reads the language and purposes of the Refugee Act in a more restrictive manner, arguing that the stated purpose of the Refugee Act of 1980 shows Congressional intent that procedures for consideration of asylum claims are to be "permanent and systematic." Only the procedures concerning resettlement absorption of refugees need be "comprehensive and uniform." The government argues that since resettlement was a major concern of Congress, the statutory language provided for uniformity, but that the uniformity was not required in the area of establishment of a procedure to adjudicate asylum claims. (*See,* Respondent's Memorandum of Points and Authorities, pps. 6–7.)

In support of its limiting interpretation, the government refers to the remarks of Senator Kennedy, the original bill's sponsor, as indicating that the bill was enacted in response to concerns about the refugees' resettlement in communities across the land. (Respondent's Memorandum of Points and Authorities, pps. 6–7), referring to Sen.Rep. No. 256, 96th Cong.2d Sess. 16, reprinted in 1980 U.S.Code Cong. & Ad. News 141. 156.

## DISCUSSION

A review of the legislative history of the Refugee Act of 1980 reveals that the government's limited interpretation of the Act is not supported by the commentary of the bill's sponsor, Senator Edward Kennedy.

> The early remarks of Senator Kennedy provide: It is the intention of the Conference that the Attorney General should immediately create a uniform procedure for the treatment of asylum claims filed in the United States or at our ports of entry. *Present regulations and procedures now used by the immigration service do not conform to either the spirit or to the new provisions of this Act.*

[Emphasis added.] 125 Cong.Rec. 3759 (1979).

Later remarks by Senator Kennedy emphasized the dual concerns of the refugee legislation.

> In fact, Mr. President, the central feature of this bill is the establishment of a statutory framework governing the admission of refugees during "normal flow" periods as well as during emergency situations.

.     .     .     .     .

The bill requires the Attorney General to establish a uniform procedure for passing upon an asylum application. We believe such a uniform procedure should allow all asylum applicants an opportunity to have their claims considered outside a deportation and/or exclusion proceeding; providing [sic, provided that] the order to show cause has not been issued. 125 Cong.Rec. 23232, 33233 (1979).

Thus, the legislative history and remarks of the bill's sponsor, and the clear language of the statute itself, stress the importance of uniform procedures for all asylum applicants, regardless of their status. Contrary to the government's assertion, it appears that Congress was concerned with the issue of the admission of asylum applicants as well as their eventual resettlement and absorption into the United States.

## STATUTORY INTERPRETATION

Under the general rules established by the United States Supreme Court and the Ninth Circuit Court of Appeals, the courts are the final authorities on issues of statutory interpretation. *Markair, Inc. v. C.A.B.*, 744 F.2d 1383, 1385 (9th Cir.1984), *citing Federal Election Commission v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981).

In construing a statute in a case of first impression, the courts may consider the language of the statute itself, its legislative history, and the interpretation given to it by its administering agency. *Brothers v. First Leasing*, 724 F.2d 789, 792 (9th Cir. 1984).

The fundamental maxim of statutory interpretation is that the language of a statute is the best and most reliable index to its meaning, and where language is clear and unequivocal, it is determinative of its construction. *Monte Vista Lodge v. Guardian Life Insurance Co. of America*, 384 F.2d 126, 128 (9th Cir.1967), *cert.den.*, 390 U.S. 950, 88 S.Ct. 1041, 19 L.Ed.2d 1142 (1968).

In the instant case, the language of each statute is clear and unequivocal. Title 8 U.S.C. § 1323(d) precludes a stowaway from a right to an exclusion hearing before an immigration judge. The Refugee Act of 1980, 8 U.S.C. § 1158(a), provides that an alien, regardless of his status, may present his asylum claim according to the uniform procedures set forth by the Attorney General which include a right to a hearing before an immigration judge. 8 C.F.R. Part 208. The use of the words "irrespective of status" as well as the establishment of procedures for aliens at ports of entry in the Refugee Act of 1980 appears to indicate Congressional intent to include stowaways under the Refugee Act provisions.

Assuming, *arguendo*, that the language of the statute is not as clear as it appears to be, the Court must then examine the statute's legislative history. However, the legislative history does not address the issues presented here, and speaks only to the general Congressional concern that the Act create uniform application procedures for the admission of those aliens seeking political asylum. No express repeal of 8 U.S.C. § 1323(d) is made or even suggested.

Failing to resolve the issue presented by an examination of the statutes' legislative histories, the Court may look to the third and final test, i.e., the agency's interpretation of the statutes.

The government's interpretation of the relevant statutes is quite clear: INS does not interpret the rights afforded by their regulations, promulgated pursuant to the Refugee Act as applying to stowaways.

It is quite evident that the INS has at no time interpreted the Refugee Act of 1980 as requiring hearings for stowaways before an immigration judge, in the face of statutory proscription of such hearings for crewmen and stowaways in Title 8 U.S.C., section 1323. It is equally evident that the INS did not intend to promulgate regulations which would contravene that statute, and it follows inevitably that the INS does not interpret

those regulations as repealing that statute.

The drafters of the regulations simply did not advert to the possibility that the Refugee Act would be interpreted to require hearings before an immigration judge for the asylum claims of crewmen and stowaways. The INS interpretation of the regulations, insofar as they speak of renewing denials of asylum claims by the district director in exclusion or deportation proceedings before an immigration judge, is that those regulations speak *only* to the circumstances of aliens *other than* crewmen, aliens who otherwise have the right to such proceedings. The regulations are not intended to create a right to such hearings where the statute provides that such right does not obtain. [Emphasis in the original.] Respondent's Memorandum of Points and Authorities, pps. 12–13.

■■■ The Court is well aware that the interpretation of a statute by an agency charged with administering it is entitled to deference. *N.L.R.B. v. Bell Aerospace Co.*, 416 U.S. 267, 274–75, 96 S.Ct. 1757, 1761–62, 40 L.Ed.2d 134 (1974); *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). However, in its consideration, the Court must reject administrative constructions of a statute which are inconsistent with the statutory mandate or which frustrate the policy that Congress sought to implement. *Markair, Inc. v. C.A.B., supra,* 744 F.2d at 1385. A discussion of agency deference is pointless if the agency interpretation violates the plain language of the Act as well as the statutory purposes revealed by the legislative history. *Tulalip Tribes of Washington v. F.E.R.C.,* 732 F.2d 1451, 1454 (9th Cir.1984).

In this case, the INS interpretation of the statutes as denying petitioner, an alien

stowaway, his right to a hearing before an immigration judge, is contradictory to the plain language as well as the purposes of the Refugee Act of 1980, which clearly intends to include aliens arriving at a port of entry, regardless of their status. For those aliens seeking political asylum their rights to be afforded the procedures set forth by INS, including the right to submit their applications before an immigration judge, appear to be absolute. The government's assertions to the contrary contravene the clear language and intent of the statute.

### CHUN v. SAVA

Only one circuit court of appeals has fully discussed and determined the issue presented here by the present petitioner.** In *Chun v. Sava,* 708 F.2d 869 (2d Cir. 1983), the Court held that alien stowaways were entitled to a hearing before an immigration judge limited to the presentation of an asylum claim, followed by whatever other procedural rights other asylum applicants are afforded. *Id.,* at 876.

As in the opinion of the Magistrate here, the Second Circuit found the plain language of the Refugee Act of 1980 as persuasive of the logical conclusion that stowaways are entitled to a hearing before an immigration judge to allow them to raise their asylum claim.

With just the foregoing in mind [the Attorney General's asylum procedures set forth at 8 C.F.R. Part 208], it would be plain that because the refugee asylum procedure applies, in the words of the statute, "irrespective of such alien's status," and because the regulations promulgated by the Attorney General under the Act do not differentiate a stowaway from any other "applicant for admission," petitioners are to be placed under

** In *Garcia v. Smith,* 674 F.2d 838, aff'd on panel rehearing, 680 F.2d 1327 (11th Cir.1982), the petitioner raised the same argument as in the instant case. The Eleventh Circuit stated that it made no judgment on the validity of the claim but held that the district court had the subject matter jurisdiction to hear it. The case was remanded to the district court for further proceedings including the merits of petitioner's arguments.

exclusion proceedings "where they may renew their requests for asylum before an immigration judge." *Id.*, at 873.

Realizing that the two statutes, 8 U.S.C. § 1323(d) and the Refugee Act of 1980, create a clear conflict, the Second Circuit sought "to give harmonious operation and effect to all statutory provisions if possible, absent some explicit indication of legislative intent derived from either the words of the statute or its legislative history." *Id.*, at 874. As a result of their goal to harmonize the two statutes, the Court concluded:

> We believe that the Refugee Act of 1980 and § 1323(d) can be harmonized by reading the refugee regulations—particularly 8 C.F.R. 208.9(f)(3)—to require a hearing before an immigration judge limited to the asylum issue for stowaways seeking admission as refugees. We think that this result is not inconsistent with § 1323(d), and that it best accommodates congressional intent that the "Attorney General ... establish a uniform procedure for passing upon any asylum application" under the Refugee Act. Sen. Rep. No. 256, 96th Cong., 2d Sess. 16, *reprinted in* 1980 U.S.Code Cong. & Ad. News 141, 156.

*Id.*, at 874.

Unlike the present case, the government in *Chun v. Sava, supra,* raised the statutory construction principle that general statutes do not generally effect an implicit repeal of an earlier specific statute. *United States v. United Continental Tuna Corp.*, 425 U.S. 164, 169, 96 S.Ct. 1319, 1323, 47 L.Ed.2d 653 (1976). *See also Monte Vista Lodge v. Guardian Life Insurance Co. of America, supra,* 384 F.2d at 129. ("[f]undamental maxims of statutory construction require that a specific section be found to qualify a general section.")

The Second Circuit's well reasoned opinion, *Chun v. Sava, supra,* 708 F.2d at 874, rejected the application of this principle. The preference of this Court also is to harmonize the two statutes, giving effect to the perceived goals of each legislature.

It is clear that the goal of the 1952 legislature was to prevent stowaways from landing illegally in the United States. Their perception of the problems attendant to stowaways resulted in legislation which punished carriers for bringing stowaways into the United States as well as imposing a restriction that stowaways could not avail themselves of the right to an exclusion hearing before an immigration judge. The Refugee Act of 1980 was concerned with the admission of refugees and those aliens seeking asylum. The compromise reached by the Second Circuit in *Chun v. Sava, supra,* and the recommended decision of the Magistrate in this case, do not defeat the intention of either statute. Rather, the statutes are effectively harmonized by limiting a stowaway's right to a hearing before an immigration judge to those circumstances where the stowaway seeks political asylum.

The Second Circuit also examined the stowaway's procedural rights which, as asylum applicants, are derived from the Refugee Act of 1980. This Court need not dwell upon this issue even though it was raised by the present petitioner based simply upon the clear language of the statute. However, the Court agrees with the Second Circuit's general conclusions and observations that while an alien seeking initial admission has very limited rights regarding his application, *Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 1477, 52 L.Ed.2d 50 (1977), a refugee may well enjoy some due process protection not available to an alien seeking only admission. *Chun v. Sava, supra,* 708 F.2d at 877.

### CONCLUSION

■ The Magistrate concludes that petitioner is entitled to raise his asylum claim in the context of a hearing before an immigration judge. The Magistrate reaches this conclusion based upon the language of the Refugee Act of 1980 and the rationale

used by the Second Circuit in its decision in *Chun v. Sava, supra.*

Accordingly, the Magistrate recommends that petitioner's writ of habeas corpus be granted.

## SUPPLEMENTAL REPORT AND RECOMMENDATION OF MAGISTRATE

### December 11, 1985

This Supplemental Report and Recommendation is submitted to the Honorable A. Wallace Tashima, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and General Order No. 194 of the United States District Court for the Central District of California.

Respondent filed objections to the Magistrate's Report and Recommendation on October 31, 1985. The Report and Recommendation recommended that petitioner's writ of habeas corpus be granted and concluded that petitioner is entitled to raise his asylum claim in the context of a hearing before an immigration judge.

Respondent filed further objections and additional authorities in support of his objections on November 13, 1985.

## DISCUSSION

Respondent's main objection to the Magistrate's Report and Recommendation is the fact that it failed to acknowledge and give consideration to INS asylum procedures which allow an alien stowaway the right to submit his or her asylum application to the INS District Director. Respondent appears to argue that having this procedure available is the key factor in deciding whether alien stowaways should have the right to raise their asylum claim before an immigration judge. The respondent states:

> "We believe that the magistrate's undue conviction in her interpretation of the statutory language arises from an incomplete understanding of the alternative procedure for the adjudication of asylum claims. This is evident from the fact that in the report and recommendation, there is no consideration whatever given to the procedure of adjudication of asylum claims by the district director of the INS.

> Although the legislative history, like the statutory language, could have been clearer on this point, it is beyond a doubt that the framers of the statute intended that there be more than one procedure for the adjudication of asylum claims."

(Objections to Magistrate's Report and Recommendation, p. 6).

The Magistrate finds respondent's argument unpersuasive.

There are five steps in the asylum application process set forth by the INS regulations.

1. Preparation and filing of the asylum application made on form I–589 which is filed with the District Director. 8 C.F.R. § 208.2, § 208.3(a)(1).

2. An in-person examination by an immigration officer or judge. 8 C.F.R. § 208.6.

3. An advisory opinion from the Bureau of Human Rights and Humanitarian Affairs (BHRHA) of the Department of State. 8 C.F.R. § 208.7.

4. A written decision from the District Director which may not be appealed. 8 C.F.R. § 208(b), (c).

5. A right to renew the denied asylum request before an immigration judge in either exclusion or deportation proceedings. 8 C.F.R. § 208.9.

The question before the Court does not involve the right of an alien stowaway to seek application before the District Director. Petitioner did not dispute the fact that he had such a right to apply to the District Director. Rather, the question is admittedly more complicated and the real issue before the Court is whether an alien stowaway has a right to take advantage of

the fifth step in the process, i.e., whether he or she has the right to renew his asylum request before an immigration judge when, in fact, another statute, 8 U.S.C. § 1323(d), would appear to negate that right.

It appears to the Magistrate that petitioner's right to apply to the District Director has very little to do with the primary question before the Court in the instant case. A consideration of whether an alien stowaway may apply to the District Director adds to, rather than detracts from, the conclusion made by the Magistrate in this case.

As respondent pointed out, a crewman or stowaway could always apply to the District Director for permission to remain in the United States if he or she qualified as a refugee within the meaning of the United Nations Protocol on the Status of Refugees. *See INS v. Stanisic,* 395 U.S. 62, 89 S.Ct. 1519, 23 L.Ed.2d 101 (1969). This was the procedure prior to the enactment of the Refugee Act of 1980, Pub.L. No. 96–212, 94 Stat. 102 (1980), and it remains part of the asylum procedure to date. However, to conclude that because this procedure was available then and is available now, is to argue that the Refugee Act was to have no effect on asylum procedures. The Congressional intent that the Attorney General establish uniform procedures for the application for asylum, irrespective of such alien's status, would have no meaning if the Court were to accept the respondent's arguments.

## CHUN v. SAVA

Respondent correctly notes that the Magistrate relied heavily upon the rationale used by the Second Circuit in *Chun v. Sava,* 708 F.2d 869 (2d Cir.1983), a case which also concluded that a stowaway was entitled to a hearing before an immigration judge to raise his asylum claim. Respondent, however, argues that reliance upon this case is misplaced because the United States Supreme Court reversed the Second Circuit's interpretation of the Refugee Act as overbroad in *INS v. Stevic,* 467 U.S. 407, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984) (reversing and remanding *Stevic v. Sava,* 678 F.2d 401 (1982)). Respondent maintains that the Second Circuit used the same interpretation of the Refugee Act in *Chun v. Sava* that it used in *Stevic v. Sava.* Thus, *a fortiori* the reasoning used by the Court of Appeals in *Chun* should not be relied upon in the instant case.

Contrary to the respondent's characterizations of what the Second Circuit relied upon in *Chun* as opposed to *Stevic,* the Court of Appeals' opinion shows that the Court of Appeals did not consider *Stevic's* rationale applicable.

> "To the extent that *Stevic* held that the standard for determining when an applicant meets the substantial requirements of the statute to be treated as a refugee has changed from one of 'clear probability' to one of 'well-founded fear' based upon 'good reason'—the point on which the Supreme Court has granted its writ of certiorari—*Stevic* is not relevant here because this case involves only procedural questions."

*Chun v. Sava, supra,* 708 F.2d at 872, n. 9.

In fact, the Supreme Court also set forth the question presented by *Stevic v. Sava* as concerning the *standard of proof* to be applied in asylum cases. *INS v. Stevic, supra,* 104 S.Ct. at 2492. The Supreme Court noted:

> "The Court of Appeals' decision rests on the mistaken premise that every alien who qualifies as a 'refugee' under the statutory definition is also entitled to a withholding of deportation under § 243(h)." *Id.,* at 2500.

Thus, the criticism of the Supreme Court of the Second Circuit's opinion in *Stevic v. Sava* is not relevant to the issues presented by the instant case.

It should also be noted that the INS did not appeal the Second Circuit's opinion in *Chun v. Sava.* Thus, by implication, this Court cannot agree that the opinion was wrongfully decided, as argued by respondent.

GUINTO v. INS

The Magistrate now considers respondent's discussion regarding the recent Ninth Circuit Court of Appeals' decision in *Guinto v. INS*, 774 F.2d 991 (9th Cir.1985).

In *Guinto*, the alien crewman made two arguments. First, he argued that he was not a crewman ineligible for suspension of deportation under 8 U.S.C. § 1254(f). The Court of Appeals found his argument without merit.

Guinto's second argument, an argument which respondent suggests is relevant to the instant case, was that any statutory exclusion of crewmen from eligibility for discretionary relief violates the Equal Protection Clause. The Ninth Circuit rejected that argument finding that Congress could rationally determine that seamen pose a special immigration problem because they reach our shores without going through the normal visa process.

Relating the Ninth Circuit's reasoning in *Guinto* to the instant case, it should be noted that the Magistrate's Report and Recommendation has already acknowledged that the Congress chose to treat crewmen and stowaways differently from other aliens by denying them the right to an exclusion hearing. *See* 8 U.S.C. § 1323(d) as compared to 8 U.S.C. § 1182(a). However, the Magistrate concludes that Congress' intention to treat stowaways and crewmen differently by denying them a right to an exlcusion hearing does not limit their rights, also provided by the Congress, under the Refugee Act. The Magistrate interprets the Refugee Act as requiring that aliens seeking asylum, irrespective of their status and including stowaways, be afforded the right to present their asylum claim before an immigration judge.

CONCLUSION

It is the final recommendation of the Magistrate, after review and consideration of the respondent's objections and argu-

ments, that petitioner's writ of habeas corpus be granted and that petitioner be found entitled to raise his asylum claim in the context of a hearing before an immigration judge.