Jose de Jesus
**DELGADO–CARRERA, Petitioner,**

v.

**UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 85–4257
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Oct. 11, 1985.

Eugenio Cazorla, Dallas, for petitioner.

Robert L. Bombough, Dist. Dir., Office of Immigration Eloise Rosas, Atty. Litigation, Allen W. Hausman, Asst. Director, Linda B. Adams, Atty., Civ.Div., Dept. of Justice, Washington, D.C., for respondent.

Richard Chandler, Dist. Dir., Dallas, Tex., David Lambert, Dist. Dir., I.N.S., New Orleans, La., for other interested parties.

Before RUBIN, JOHNSON, and JONES, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A long-time resident alien ordered excluded from the United States after he was readmitted on parole from a visit abroad seeks judicial review of the order. He contends that an exclusion hearing was improper and that he should have been given notice when he was given authorization to leave the country that, upon return, he might be subject to exclusion. Because orders entered in exclusion hearings are by statute reviewable only upon application for a writ of habeas corpus and because whether an alien should be subjected to an exclusion rather than a deportation hearing is an issue cognizable in an exclusion hearing, we deny review.

I.

Jose de Jesus Delgado-Carrera is a native and citizen of Mexico. He entered the United States illegally in 1974. Proceedings to exclude aliens who had entered the United States from the Western Hemisphere were enjoined by order of the United States District Court for the Northern District of Illinois in *Silva v. Levi.*[1] That order enjoined deportation of any Western Hemisphere alien who had a visa priority date issued during the period in which visas to Cubans were charged against Western Hemisphere quotas. Those visa numbers

---

1. 76 C 4268 (USDC N.D., Ill., March 22, 1977).

were to be redistributed to Western Hemisphere aliens. On November 3, 1980, while under protection of the *Silva* order, Delgado-Carrera sought and was granted authorization to travel abroad and reenter the United States. The authorization does not reflect the reasons for the request, but shows only that it was made for humanitarian reasons.

When he returned, on November 20, 1980, Delgado-Carrera was paroled into the United States.[2] Delgado-Carrera did not receive a visa under the redistribution ordered by *Silva* because the numbers were exhausted before his priority date was reached. After all the visa numbers were redistributed, the injunction in *Silva* was dissolved. Subsequently, Delgado-Carrera was notified on April 20, 1982, that he was no longer protected by the order and he was granted a period of thirty days to depart voluntarily from the United States. He did not depart and exclusion proceedings were instituted against him for being an immigrant who did not possess a valid visa or entry permit.[3]

An exclusion hearing was held before an immigration judge on December 14, 1983. Delgado-Carrera, represented by counsel, conceded that he was not eligible for admission to the United States as an immigrant, but requested the opportunity to apply for a suspension of deportation. The immigration judge denied the request, holding that suspension was not available to an alien in an exclusion proceeding. The judge held that Delgado-Carrera "had no evidence to present that he would be admissable [*sic*] to the Untied [*sic*] States in any status or capacity whatsoever." The judge also found that Delgado-Carrera would not have been eligible to apply for suspension, even in deportation proceed-

ings, because he did not meet the statutory requirement of seven years continuous presence in the United States. The judge also denied Delgado-Carrera's motion to terminate the exclusion proceeding in favor of a deportation proceeding. On appeal, the Board of Immigration Appeals affirmed the decision, holding that an alien in an exclusion proceeding is not entitled to seek suspension of deportation and stating that, even if this were a deportation proceeding, Delgado-Carrera would not be eligible to seek suspension.

## II.

United States circuit courts have jurisdiction of appeals from final orders of deportation.[4] They do not have power to review an order of exclusion, except on appeal of a habeas corpus proceeding filed in district court.[5] The threshold issue in this case is whether the proceeding against Delgado-Carrera was a deportation or an exclusion proceeding.

"[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission ... and those who are in the United States after an entry, irrespective of its legality," the Supreme Court said in *Leng May Ma v. Barber*.[6] As the Court noted, the distinction was "carefully preserved" in the Immigration and Nationality Act. Those seeking admission or readmission are subject to "exclusion proceedings" to determine whether "they shall be allowed to enter or shall be excluded or deported." [7] On the other hand, aliens who have already entered the United States are subject to "expulsion" through deportation procedures, as distinguished from "exclusion," if they

2. *See* § 212(d)(5) of the Immigration and Naturalization Act, 8 U.S.C. § 1182(d)(5).

3. § 212(a)(14) & (20) of the Immigration and Naturalization Act, 8 U.S.C. § 1182(a)(14) & (20).

4. § 106(a) of the Immigration and Naturalization Act, 8 U.S.C. § 1105a(a).

5. § 106(b) of the Immigration and Naturalization Act, 8 U.S.C. § 1105a(b). F. Auerbach, E. Harper & R. Chase, Immigration Laws of the United States 497–501 (3d ed. 1975).

6. 357 U.S. 185, 187, 78 S.Ct. 1072, 1073, 2 L.Ed.2d 1246 (1958).

7. 8 U.S.C. § 1226(a).

fall within certain "general classes of deportable aliens."[8]

 The two types of proceedings differ in a number of ways, which are set forth by the Supreme Court in *Landon v. Plasencia*,[9] but, in sum, the alien cited in a deportation hearing has the benefit of more protective procedural and substantive rights and a stricter standard of judicial review.[10] An alien who is placed on parole after physically entering the United States is treated in the "same manner as ... any other applicant for admission to the United States."[11] A paroled alien is in the same position as one who seeks admission at the border.[12]

 A paroled alien is, therefore, not deemed to be within the United States and is subject to exclusion just as if he were initially appearing at the border seeking entry.[13] The proceeding against Delgado-Carrera having been exclusionary, we lack jurisdiction to review it directly.[14]

Delgado-Carrera contends that, when his request for parole was granted, he should have been warned that, upon return, he might become subject to exclusion and that his prior illegal residence might no longer entitle him to deportation proceedings. Arguing that this offends due process, Delgado-Carrera draws support from *Joshi v. INS.*[15] His reliance is misplaced, however, because *Joshi* was properly brought as an appeal from a denial of a writ of habeas corpus.

We express no opinion on any substantive ground that Delgado-Carrera may have to assert that his long residency in the United States warrants the safeguards attendant to a deportation hearing or on his claim of a due process violation.[16] The Supreme Court has explicitly recognized that a resident alien who goes abroad and returns is differently situated from one whose residency is uninterrupted.[17] Any appeal from an exclusion proceeding, even one that challenges the appropriateness or due process of that proceeding, can only be brought by a habeas corpus petition to the district court.

For these reasons, the petition for review is DENIED.

**8.** 8 U.S.C. § 1251.

**9.** 459 U.S. 21, 24, 103 S.Ct. 321, 325, 74 L.Ed.2d 21, 27 (1982).

**10.** See F. Auerbach, E. Harper & R. Chase, Immigration Laws of the United States 497–501 (3d ed. 1975); R. Steel, Steel on Immigration Law § 13:20 (1985).

**11.** 357 U.S. 185, 187, 78 S.Ct. 1072, 1073, 2 L.Ed.2d 1246, 1248 (1958).

**12.** *Id.* See also *Yuen Sang Low v. Attorney General*, 479 F.2d 820, 822–23 (9th Cir.), *cert. denied*, 414 U.S. 1039, 94 S.Ct. 539, 38 L.Ed.2d 330 (1973).

**13.** *Siu Fung Luk v. Rosenberg*, 409 F.2d 555, 558 (9th Cir.), *cert. dismissed*, 396 U.S. 801, 89 S.Ct. 2151, 24 L.Ed.2d 38 (1969); *United States ex rel. Kordic v. Esperdy*, 386 F.2d 232, 235 (2d Cir. 1967); *In re Milanovic's Petition*, 162 F.Supp. 890, 894 (S.D.N.Y.1957), *aff'd*, 253 F.2d 941 (2d Cir.1958).

**14.** § 106(b) of the Act provides in pertinent part:
> Notwithstanding the provisions of any other law, any alien against whom a final order of exclusion has been made ... *may obtain judicial review of such order by habeas corpus proceedings and not otherwise.*

8 U.S.C. § 1105a(b) (emphasis added). See *Castillo-Magallon v. I.N.S.*, 729 F.2d 1227 (9th Cir. 1984).

**15.** 720 F.2d 799 (4th Cir.1983).

**16.** *Cf. Rosenberg v. Fleuti*, 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963); *Kwong Hai Chew v. Colding*, 344 U.S. 590, 73 S.Ct. 472, 97 L.Ed. 576 (1953); *Joshi v. INS*, 720 F.2d 799 (4th Cir.1983).

**17.** *Landon v. Plasencia*, 459 U.S. 21, 30, 103 S.Ct. 321, 328, 74 L.Ed.2d 21, 31 (1982).