Line Drawing of "Titan"
PTEx100 Highlighting Side-Design

Trademark Drawing from
Stripecheck Registration PTEx1,
Highlighting Trademark

**ARGENBRIGHT SECURITY, Plaintiff,**

v.

**CESKOSLOVENSKE AEROLINE,**
Defendant and Third–Party
Plaintiff,

v.

Eugene McNARY, Commissioner, United
States Immigration and Naturalization
Service and William P. Barr, Attorney
General, United States Department of
Justice, Third–Party Defendants.

No. 92 Civ. 6760 (JES).

United States District Court,
S.D. New York.

April 19, 1994.

278

Schneck Weltman Hashmall & Mischel, New York City, for defendant and third-party plaintiff; Anne Feldstein, David M. Hashmall, of counsel.

Law Offices of Allan I. Mendelsohn, Washington, DC, for defendant and third-party plaintiff; Allan I. Mendelsohn, Marvin L. Szymkowicz, of counsel.

Mary Jo White, U.S. Atty., S.D.N.Y., New York City, for third-party defendants; Nancy L. Savitt, Asst. U.S. Atty., Paul W. Virtue, Acting Gen. Counsel, Edward R. Grant, Deputy Associate Gen. Counsel, I.N.S., of counsel.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Third-party plaintiff Ceskoslovenske Aeroline ("CSA") brings this third-party action to recover the costs associated with the detention of an illegal stowaway during the pendency of his application for political asylum. Third-party defendants Eugene McNary, Commissioner of the United States Immigration and Naturalization Service ("INS") and William P. Barr, Attorney General of the United States of America, move to dismiss CSA's amended third-party complaint for failure to state a cause of action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, defendants' motion to dismiss the amended third-party complaint is granted.

## BACKGROUND

Third-party plaintiff CSA provides worldwide transportation services for passengers, mail and cargo, including connections from Prague, Czechoslovakia to New York City. Amended Third–Party Complaint ("ATP Complaint") ¶ 4. On May 4, 1992, Mr. Victor Mirjanov arrived in the United States on CSA's flight OK600 without proper documentation, as defined by 8 U.S.C. § 1182(a)(7), and as a stowaway, within the meaning of 8 U.S.C. § 1182(a)(6)(D).[1] Id. ¶ 7. Upon his arrival, Mr. Mirjanov exercised his legal rights under the Immigration and Nationality Act (the "INA"), as amended in 1980, 8 U.S.C. § 1101 et seq. (1993), by applying for political asylum pursuant to 8 U.S.C. § 1158. Id. ¶ 9. Consistent with its policy and practice, the INS ordered the detention of Mr. Mirjanov in the New York City area, at CSA's expense, until a decision was rendered on his application.[2] Id.

At the request of CSA, plaintiff Argenbright Security, Inc. ("Argenbright"), a Georgia corporation with offices and facilities at John F. Kennedy International Airport, provided security services during Mr. Mirjanov's period of detention. Complaint ¶ 21–22.

---

1. While the term is employed by section 1182(a)(6)(D), there is "no statutory definition of stowaway." Zacharias v. McGrath, 105 F.Supp. 421, 427 (D.D.C.1952). Nonetheless, by their own pleadings, neither plaintiff nor third-party plaintiff dispute that Mr. Mirjanov entered the country as a stowaway. Complaint ¶ 15; ATP Complaint ¶ 7.

2. In a signed written agreement with the INS, CSA agreed to hold Mr. Mirjanov "pending [an] interview at the [INS] Newark Asylum office." ATP Complaint ¶ 38. The agreement was executed on INS Form I–259. Id.

Thereafter, despite due demand by Argenbright, CSA refused to tender payment for the services rendered. *Id.* ¶ 26, 32. On or about September 14, 1992, Argenbright commenced the instant action against CSA, seeking the costs of detaining Mr. Mirjanov in the United States from on or about May 4, 1992 to June 26, 1992.

On October 23, 1992, CSA then filed the instant third-party complaint alleging, *inter alia,* that the costs of detaining an excludable alien stowaway, such as Mr. Mirjanov, must be borne by the INS. On or about January 29, 1993, CSA paid Argenbright the sum of $26,100 in consideration for Argenbright's agreement to dismiss its complaint against CSA, with prejudice.[3] ATP Complaint ¶ 10. On April 16, 1993, the INS moved to dismiss CSA's third-party complaint for failure to state a cause of action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## DISCUSSION

■ For purposes of a Rule 12(b)(6) motion, a complaint may not be dismissed unless relief cannot be granted under any set of facts alleged. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Thus, at this stage of the litigation, the Court must accept plaintiff's factual allegations as true, *see Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1983), while reaching its own conclusions of law. *See United States v. Bonanno Organized Crime Family,* 879 F.2d 20, 27 (2d Cir.1989). In order to facilitate the ensuing analysis, the statutory scheme governing immigration and asylum will be covered briefly.

The INA, and the regulations promulgated thereunder, govern the handling of individuals entering the country from abroad. In order to separate aliens, possibly subject to exclusion, from U.S. nationals, immigration officials may inspect all individuals entering the United States. 8 U.S.C. § 1225(a). This inspection may be conducted either on board the vessel or elsewhere, at a designated time and place. *Id.* To facilitate this process, individuals may be required to disclose information relevant to their status, and whether they fall within an excluded class. *Id.* If, upon preliminary inspection, an alien is not clearly entitled to land, he must be detained for additional examination by a special inquiry officer. *Id.* at § 1225(b). This additional examination is, in effect, an exclusion hearing before an immigration judge which, absent an appeal, conclusively determines an alien's immigration status.

■ The Refugee Act of 1980, 8 U.S.C. Pub.L. No. 96–212, 94 Stat. 102 (codified at 8 U.S.C. § 1157(a) *et seq.* (1993)), provides that aliens may seek political asylum in the United States, "irrespective of ... status." 8 U.S.C. § 1158(a).[4] In accordance with that statutory directive, courts have uniformly held that stowaways, despite their status, have a right to seek political asylum in this country. *See Yiu Sing Chun v. Sava,* 708 F.2d 869, 876 (2d Cir.1983); *Garcia v. Smith,* 674 F.2d 838, 839–40 (11th Cir.1982); *Fang-Sui Yau v. Gustafson,* 623 F.Supp. 1515, 1521–23 (C.D.Cal.1985). However, because a stowaway may not be deported while an application for asylum is pending, an application for asylum is treated as a request for withholding of deportation. *See Adebisi v. Immigration & Naturalization Service,* 952 F.2d 910, 912–13 (5th Cir.1992). In addition, INS regulations provide that, pending the adjudication of the asylum claim, the INS may parole the stowaway into the custody of the carrier. *See* 8 C.F.R. § 253.1(f)(3).

---

**3.** In its complaint, Argenbright sought damages in the amount of $29,107.02, plus interest, costs and disbursements. Complaint ¶ 27. By virtue of the settlement agreement, CSA paid Argenbright the compromised figure of $26,100, and the complaint was in fact dismissed with prejudice. ATP Complaint ¶ 10. In its third-party action, CSA seeks to recover $26,100, representing the sum that CSA paid to Argenbright in settlement of their dispute. *Id.* at p. 12.

**4.** Section 1158(a) provides that "an alien physically present in the United States or .at a land border or port of entry, irrespective of such alien's status, [may] apply for asylum, and the alien may be granted asylum ... if ... such alien is a refugee within the meaning of section 1101(a)(42)(A) of this title." 8 U.S.C. § 1158(a).

The issue presented in this case is whether, under the present statutory scheme, a carrier is required to bear the costs associated with the detention of a stowaway pending the outcome of an asylum hearing. In this case of largely first impression,[5] third-party plaintiff CSA seeks to recover the detention expenses resulting from Mr. Mirjanov's petition for political asylum.

Historically, the maintenance expenses incident to the inspection, examination, and detention of aliens were borne, pursuant to section 1223, by the commercial carriers responsible for transporting such aliens into this country. *See* 8 U.S.C. § 1223 (repealed Pub.L. No. 99–500, 100 Stat. 1783–56 (1986)). In 1986, however, Congress repealed section 1223 and introduced, in its place, the Immigration User Fee Statute (the "User Fee Statute"), Pub.L. No. 99–591, 100 Stat. 3341–53 (codified as part of 8 U.S.C. § 1356(d) (1988)), which shifted the financial responsibility for the detention and deportation costs of excludable aliens to the INS.[6] To defray these expenses by the INS, Congress imposed a five dollar fee from each passenger arriving in the United States aboard a commercial aircraft or vessel, and provided that the funds so collected should be deposited in a separate account at the United States Treasury entitled the "User Fee Account." *See* 8 U.S.C. § 1356(h). Under section 1227, however, the cost of maintaining an "excluded" alien prior to deportation, including detention expenses, remains upon the carrier responsible for transporting such alien into this country. *Id.* at § 1227(a).

The INA does not explicitly define an "excluded" alien; however, it does enumerate the classes of excludable aliens, ineligible to secure a necessary visa, who will be excluded from admission. *See* 8 U.S.C. § 1182(a); *Graham v. Immigration & Naturalization Service*, 998 F.2d 194, 195 (3rd Cir.1993). Under section 1182, these classes include, *inter alia*, those who lack proper documentation, those likely to become a public charge, those who suffer from physical or mental disease, those who have committed a crime involving moral turpitude or controlled substances, or those who may be an illegal entrant into the country. *See* 8 U.S.C. § 1182(a)(1)–(6). With regard to this last class in particular, the statute specifically provides that "[a]ny alien who is a stowaway is excludable." *Id.* at § 1182(a)(6)(D). Based upon this language, CSA argues that the INA treats stowaways as merely "excludable" rather than "excluded," and that its claim for detention expenses is therefore not barred by 8 U.S.C. § 1227(a).

In determining whether a stowaway is an excluded alien, the Court must "not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *United States Nat'l Bank of Oregon v. Independent Ins. Agents of Am.*, —— U.S. ——, ——, 113 S.Ct. 2173, 2182, 124 L.Ed.2d 402 (1993) (citation omitted). Thus, the Court must construe the INA in its entirety in order to resolve any ambiguity which stems, in part, from the absence of any explicit definition of the term "excluded." *See Smith v. United States*, —— U.S. ——, ——,

**5.** The issues at bar have not been addressed by any court in this Circuit, and apparently, by only one court in the entire country. *See Dia Navigation Co., Ltd. v. Reno*, 831 F.Supp. 360, 368 (D.N.J.1993). In *Dia Navigation*, the court held, *inter alia*, that the carriers are required to bear the detention costs of illegal stowaways who have applied for political asylum. *Id.* at 373. In addition, the court held that the INS policy did not deviate from existing INS regulations, *id.* at 375, that the INS policy is neither arbitrary nor capricious in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.* (1988), *id.* at 376–77, and that the INS was not required to publish such policy pursuant to notice and comment procedures under the APA. *Id.* at 377. Moreover, the court held that, because an action for reimbursement of detention

expenses is essentially for compensatory money damages, the carrier was precluded from asserting its claim under 5 U.S.C. § 702. *Id.* at 379–80.

**6.** The User Fee Statute provides that:

The Secretary of the Treasury shall refund out of the Immigration User Fee Account to any appropriation the amount paid out of such appropriation for expenses incurred by the Attorney General in providing immigration inspection and preinspection services ... and *providing detention and deportation services for excludable aliens* arriving on commercial aircraft and vessels.

8 U.S.C. § 1356(h)(2)(A)(v) (emphasis added).

113 S.Ct. 2050, 2056, 124 L.Ed.2d 138 (1993); *National Labor Relations Board v. Federbush Co.,* 121 F.2d 954, 957 (2d Cir.1941). For the reasons that follow, the Court concludes that, under any reasonable interpretation of the INA, stowaways must be considered excluded aliens.

The INA draws a clear distinction between the treatment afforded "excludable" aliens, who are detained pending a final determination on their exclusion, and stowaways. Aliens who are merely excludable, but not yet excluded, are entitled to an exclusion hearing before an immigration judge to determine whether they "shall be excluded and deported," 8 U.S.C. § 1225–26, and an appeal to the Attorney General in the event of an adverse determination. *Id.* at § 1226(b). In striking contrast, stowaways are considered to be a "disfavored" category of aliens. *See Yiu Sing Chun,* 708 F.2d at 875 n. 21 (referring to stowaway as highly disfavored class); *see also Haitian Refugee Center v. Gracey,* 809 F.2d 794, 839 n. 129 (D.C.Cir.1987) (citing *Yiu Sing Chun* ). Thus, the provisions of section 1225, governing the detention of aliens for examination before special inquiry officers and the right of appeal, do not apply to aliens who arrive as stowaways. *See* 8 U.S.C. § 1225. In fact, except for temporary medical treatment, alien stowaways are not even permitted to land in the United States. *Id.* at § 1323(d).

Moreover, as the available legislative history suggests, Congress intended to completely exclude stowaways in order to preclude their illegal immigration. Prior to the enactment of the INA in 1952, stowaways were generally barred entry, but the Attorney General had discretionary authority to admit them if they were otherwise admissible. *See Stone v. Tillinghast,* 32 F.2d 447, 448 (1st Cir.1929). That discretionary authority was revoked in 1952. *See Fang–Sui Yau,* 623 F.Supp. at 1519; H.R.Rep. No. 1365, 82 Cong.2d Sess., *reprinted* in 1952 U.S.C.C.A.N. 1653, 1703, 1724. Thus, as a practical matter, a stowaway is automatically excluded from the very outset. *See Medina v. O'Neill,* 589 F.Supp. 1028, 1036 (S.D.Tex. 1984) (because stowaways not entitled to hearing before special inquiry officer, "they are automatically excludable once identified as a stowaway"), *reversed in part and vacated in part on other grounds,* 838 F.2d 800 (5th Cir.1988).

The fact that stowaways may now apply for political asylum has not altered their excluded status. *See Yiu Sing Chun,* 708 F.2d at 876; *Matter of Waldei,* 19 I & N Dec. 189, 193 (BIA 1984); *c.f. United States ex rel. Tom We Shung v. Murff,* 176 F.Supp. 253, 256–58 (S.D.N.Y.1959) (alien remains "excluded" despite noncompliance with congressional mandate that excluded aliens be deported immediately due to protracted litigation), *aff'd on opinion below,* 274 F.2d 667 (2d Cir.1960). While section 1158(a) entitles a stowaway to apply for asylum, the right is limited to a hearing "solely to the issue of asylum eligibility," thereby preserving the basic thrust of section 1323(d). *Yiu Sing Chun,* 708 F.2d at 876.[7] Thus, despite the availability of an asylum hearing, stowaways remain "excluded" aliens and, as such, the expenses incident to their detention must be borne by carriers pursuant to section 1227(a)(1). *See Dia Navigation,* 831 F.Supp. at 371–73.

Nor is the Court persuaded that the subsequent enactment of the User Fee Statute compels a different result. When the User Fee Statute was enacted in 1986, Congress was presumably aware that section 1227(a)(1) required that maintenance and deportation expenses of "excluded" aliens be borne by the carrier, and that section 1323(d) denied stowaways the procedural rights afforded other aliens. Nevertheless, neither of these provisions was repealed or amended. It is therefore reasonable to assume that Congress did not intend "to alter the long-standing treatment of ... stowaways under

---

**7.** As per INS regulations, the asylum officer and the Board of Immigration Appeals merely address the merits of a stowaway's application for asylum, as opposed to a stowaway's immigration status. *See* 8 C.F.R. §§ 208.4(b)(3), 253.1(f)(2), (4). It should also be noted that, under INS regulations, the stowaway must be deported if asylum is deemed inappropriate. *Id.* at § 208.-22.

the INA." *Dia Navigation*, 831 F.Supp. at 371.[8]

■ Finally, CSA argues that its liability, if any, is limited to the $3,000 administrative penalty authorized by 8 U.S.C. § 1323(d).[9] ATP Complaint ¶ 25–26. However, this penalty is clearly designed as a sanction for carriers who fail to detain or deport a stowaway and has nothing to do with the cost of detention of stowaways who are properly detained pending an asylum hearing. *See* 1952 U.S.C.C.A.N. at 1721–23; *see also Continental Management, Inc. v. United States*, 527 F.2d 613, 620, 208 Ct.Cl. 501 (1975). As a result, the availability of this fine does not relieve CSA of its statutory responsibility, as discussed above, to bear the full maintenance costs associated with the detention of excluded alien stowaways. *See Dia Navigation*, 831 F.Supp. at 373.

■ CSA also contends that the INS policy constitutes arbitrary and capricious agency action in violation of the APA.[10] ATP Complaint ¶ 28. Moreover, CSA asserts that the INS policy constitutes a legislative or substantive "rule" within the meaning of the APA, *see* 5 U.S.C. §§ 553, 706(2)(D), and that the failure to promulgate it through the APA's notice and comment procedures rendered the policy void and unenforceable. ATP Complaint ¶ 29.

■ In reviewing an administrative construction of a statute, it must first be determined whether Congress "has directly spoken to the precise question at issue." *Chevron, U.S.A., Inc. v. National Resources Defense Counsel, Inc.*, 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694, *reh'g denied*, 468 U.S. 1227, 105 S.Ct. 28, 82 L.Ed.2d 921 (1984). Where that is the case, "the

court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43, 104 S.Ct. at 2778–82. Moreover, if an administrative construction does not contravene clearly discernible legislative intent, the reviewing court may not impose its own construction on the statute. *Id.* at 843, 104 S.Ct. at 2782. Rather, it must merely determine whether the administrative interpretation constitutes a permissible construction of the statute. *Id.* at 843–44, 104 S.Ct. at 2782–83; *see also Immigration & Naturalization Service v. Cardoza–Fonseca*, 480 U.S. 421, 447–48, 107 S.Ct. 1207, 1221–22, 94 L.Ed.2d 434 (1987) (citing *Chevron* ).

■ As discussed above, the INA, by its plain language, treats stowaways as excluded aliens and requires carriers to assume the responsibility for the maintenance costs associated with their detention. In merely tracking the statutory language of the INA, the INS policy does not violate the APA. In any event, even assuming congressional intent on this issue is unclear, the INS interpretation constitutes a reasonable interpretation of the statute to which the Court must afford appropriate deference. *See Chevron*, 467 U.S. at 844–45, 104 S.Ct. at 2782–83. The Court also concludes that the INS policy is neither arbitrary nor capricious. *See Dia Navigation*, 831 F.Supp. at 376–77.

■ Furthermore, the INS was not required, pursuant to the APA, to publish notice and comment procedures before requiring carriers to assume responsibility for stowaway detention. Under the APA, notice and comment procedures need only be published if an agency, by its action, "intends to create new law, rights or duties." *General Motors Corp. v. Ruckelshaus*, 742 F.2d 1561,

---

**8.** A contrary interpretation would, in effect, render sections 1227(a) and 1323(d) superfluous. *See National Insulation Transp. Comm. v. Interstate Commerce Comm'n*, 683 F.2d 533, 537 (D.C.Cir.1982).

**9.** Under section 1323(d), if so directed by an immigration officer, a carrier may be fined if it fails to properly detain a stowaway at a designated place, or fails to properly deport a stowaway. *See* 8 U.S.C. § 1323(d).

**10.** Relying upon 8 C.F.R. § 253.3(b)–(d), CSA also argues that the INS is required to assume

custody of a stowaway pending the resolution of an application for political asylum. However, this regulation does not apply to stowaways, since it applies only to excludable aliens who are entitled to exclusion hearings and the rights of appeal noted above, *i.e.*, those without proper documents, those with false documents or those with documents but who are otherwise inadmissible. Thus, contrary to CSA's argument, the INS policy does not violate its own regulations. *See Dia Navigation*, 831 F.Supp. at 373–75.

1565 (D.C.Cir.1984) (citation omitted); *see also* 5 U.S.C. § 553(b)(A); *Jean v. Nelson,* 727 F.2d 957, 962 (11th Cir.1984), *aff'd* 472 U.S. 846, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985). The INS policy, referred to above, is interpretative in nature and does not create rights or duties apart from those clearly established by the INA. As such, notice and comment were not required. *See Dia Navigation,* 831 F.Supp. at 377.

The Court concludes therefore that carriers, rather than the INS, must bear the financial responsibilities associated with illegal stowaways who exercise their statutory right to apply for political asylum, and that neither the INA nor the APA is violated by this policy. As a result, the Court need not address whether CSA could have sought reimbursement of its expenses under the APA, *see* 5 U.S.C. § 702, or whether sovereign immunity would have foreclosed such relief. *See Bowen v. Massachusetts,* 487 U.S. 879, 893, 108 S.Ct. 2722, 2731, 101 L.Ed.2d 749 (1988); *Dia Navigation,* 831 F.Supp. at 379–80 (holding that carrier's action to recover detention expenses precluded under APA).

In accordance with the foregoing discussion, the motion to dismiss by the defendants shall be and hereby is granted. The Clerk of the Court is directed to enter appropriate judgment for the defendants and close the above-captioned action.

It is **SO ORDERED.**