**Mikeli WALDEI**

v.

**IMMIGRATION AND NATURALIZA-TION SERVICE & Legalization Appeals Unit.**

**Civil Action No. 94–CV–2510.**

United States District Court,
E.D. Louisiana.

Sept. 12, 1996.

Thomas Perrill Adams, New Orleans, LA, for petitioner.

Doris R. Piper, Francesco Isgro, U.S. Attorney's Office, New Orleans, LA, for respondent.

## ·*ORDER AND REASONS*

BERRIGAN, District Judge.

This matter comes before the Court as a Petition for Habeas Corpus with Stay of Deportation, Declaratory Judgement and Injunction Relief. Mikeli Weldei ("Weldei") seeks: (1) judicial review of the decision of the Legalization Appeal Unit ("LAU") denying his application for adjustment of status pursuant to 8 U.S.C. § 1255a and 8 C.F.R. 245a.4; (2) judicial review of the decision of the Immigration and Naturalization Service ("INS") District Director's denial of his application for asylum under 8 U.S.C. § 1158; and (3) issuance of a writ of habeas corpus to enjoin his deportation as a result of an administratively final order of exclusion. Having considered the record, the memoranda of counsel and the law, the Court has determined that all claims set forth in the motion for Habeas Corpus should be DISMISSED.

### I. Factual Background and Prior Proceedings

The petitioner is an Ethiopian native and citizen who was a stowaway aboard the M/V George Whyte on August 31, 1980. He was denied permission to land at the port of New York and was detained aboard ship. After New York, the ship made stops in New Jersey and Miami, finally arriving in New Orleans on September 11, 1980. At that time, Waldei informed the immigration inspector who boarded the vessel of his intent to apply for asylum. The INS contacted the Bureau of Human Rights and Humanitarian Affairs ("BHRHA") at the Department of State regarding Waldei's asylum application. BHRHA informed the INS that Waldei appeared to have a valid claim to seek asylum and Waldei was immediately paroled into the United States pending adjudication of his asylum application. This initial parole was extended on November 13, 1981.

In the application for asylum, Waldei stated that he feared persecution by communists if returned to Ethiopia because he was an active member of an anti-communist organization and his uncle had been killed by the communist party. However, the record from the administrative proceedings does not reflect that Waldei ever submitted any docu-

mentation or declaration[1] in support of his asylum claim.

On August 6, 1982, the BHRHA advised the INS that the applicant had not established a "well-founded fear of persecution" if returned to Ethiopia. On September 25, 1982, the INS District Director notified Waldei of his intent to deny his asylum application. Waldei was given thirty days to rebut the findings and to submit additional documents. He failed to provide the information requested or any other evidence in rebuttal. Hence, on November 19, 1982, the District Director denied his request for asylum and subsequently revoked his parole. Approximately four months later on March 14, 1983, the INS instituted exclusion proceedings against him as a stowaway under 8 U.S.C. § 1182(a)(18).

Subsequently, Waldei sought review of the INS' denial of his application for asylum during his exclusion hearing. In the published decision, *Matter of Waldei*, 19 I & N Dec. 189 (BIA 1984) the immigration judge stated that he lacked jurisdiction to hear the underlying exclusion case because of Waldei's status as a stowaway. Additionally, absent such jurisdiction "he was without authority to consider the applicant's renewed request for asylum" *Id.*, at 190. The Board of Immigration Appeals ("BIA") agreed that an entrant stowaway was not entitled to an exclusion hearing before an immigration judge because the exclusionary procedures providing the jurisdictional basis for the exclusion hearing do not apply to stowaways such as Waldei.

Following the termination of the exclusion proceedings in 1983 and BIA's decision of October 1984, the INS still did not enforce Waldei's removal from the country. Waldei was permitted to remain in the United States under the Extended Voluntary Departure ("EVD") program from July 17, 1985 through July 17, 1988.

On March 15, 1988, Waldei applied for temporary resident status (legalization/amnesty) under the Immigration Reform and Control Act of 1986 ("IRCA"), 8 U.S.C. § 1101, *et seq.* On March 1, 1989, the Southern Regional Processing Facility denied Waldei's application for temporary resident status because of his statutory ineligibility resulting from his stowaway status. He appealed the decision to the LAU. On July 9, 1993, the LAU dismissed the appeal based on Waldei's parole status as a stowaway. The LAU also found that Waldei was not eligible for EVD adjustment because of his status as a stowaway.

Subsequently, Waldei filed this habeas corpus petition. No issue regarding the timeliness of the habeas corpus petition has been raised. Apparently, this is Waldei's first petition for habeas corpus relief and the Court will entertain it.

## II. Scope of Judicial Review

The government claims that this Court lacks jurisdiction to review LAU decisions denying applications for adjustment of status.

■ The Constitution of the United States contains no express provision authorizing the exclusion and deportation of persons found in the country without proper documentation. The authority has been determined to be inherent in the sovereign power of the government. *See Fong Yue Ting v. United States*, 149 U.S. 698, 13 S.Ct. 1016, 37 L.Ed. 905 (1893).

The United States Supreme Court defers to Congress on immigration issues and has deemed "plenary" Congress' power over matters of exclusion and deportation, *Kleindienst v. Mandel*, 408 U.S. 753, 769, 92 S.Ct. 2576, 2585, 33 L.Ed.2d 683 (1972), a power that is "absolute and unqualified," *Fong Yue Ting*, 149 U.S. at 707, 13 S.Ct. at 1019–20. In *Fiallo v. Bell*, 430 U.S. 787, 792, 97 S.Ct. 1473, 1477–78, 52 L.Ed.2d 50 (1977), the Supreme Court admonished that the scope of judicial review of immigration law is "limited." "[O]ver no conceivable subject is the legislative power of Congress more complete."[2] *Oceanic Steam Navigation Co. v.*

---

1. In *Matter of Mogharrabi*, 19 I. & N. Dec. 439 (B.I.A.1987), the BIA stated that an applicant's own testimony may be sufficient to meet the burden of proof if the testimony is believable, consistent, and sufficiently detailed.

2. *See Pelaez v. INS*, 513 F.2d 303 (5th Cir.1975), *cert. denied*, 423 U.S. 892, 96 S.Ct. 190, 46

*Stranahan,* 214 U.S. 320, 339, 29 S.Ct. 671, 676, 53 L.Ed. 1013 (1909).

 In determining the limits of judicial review, the federal courts must examine the plain language of the relevant legislative enactments and relevant jurisprudence. "To preclude judicial review ... a statute ... must upon its face give clear and convincing evidence of an intent to withhold it." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 140 n. 2, 87 S.Ct. 1507, 1511 n. 2, 18 L.Ed.2d 681 (1967). The district courts have jurisdiction to review an order of exclusion by habeas corpus proceeding under 8 U.S.C. § 1105a(a). *Delgado–Carrera v. INS,* 773 F.2d 629, 630 (5th Cir.1985).

### III. DISCUSSION

#### A. District Court Jurisdiction in LAU Appeals

██ With respect to Waldei's challenge to the LAU decision denying his legalization application, the government presents two arguments: (1) this Court lacks subject matter jurisdiction because exclusive jurisdiction belongs to the Courts of Appeals; and (2) if the district court has jurisdiction, it should find that Waldei's applications for legalization and EVD were properly denied. In support of its jurisdictional argument, the government contends that the Congressional scheme permits judicial review of a denial of an application to adjust status only in connection with an order of deportation, pursuant to § 106 of the INA, 8 U.S.C. § 1105a.[3]

The government's contention is correct. "Under section 106(a) of the [INA], 8 U.S.C. § 1105a(a) (1976), the courts of appeals are vested with exclusive jurisdiction to review 'all final orders of deportation.'" *Haitian Refugee Center v. Smith,* 676 F.2d 1023, 1032 (5th Cir.1982). In *Reno v. Catholic Social Services, Inc.,* 509 U.S. 43, 53–55, 113 S.Ct.

L.Ed.2d 124 (1975) (Congress has plenary power in immigration area, particularly in determining which aliens will be admitted.); *Ahrens v. Rojas,* 292 F.2d 406 (5th Cir.1961) (Exclusion of aliens is fundamental act of sovereignty and courts have no power not expressly granted by Congress in exclusion cases).

2485, 2493–94, 125 L.Ed.2d 38 (1993), the Supreme Court stated:

> The Reform Act ... provides an exclusive scheme for administrative and judicial review of "determination[s] respecting ... application[s] for adjustment of status." ... Section 1255a(f)(4)(A) provides that a denial of adjustment of status is subject to review by a court "only in the judicial review of an order of deportation under [8 U.S.C. § 1105a]"; under § 1105a, this review takes place in the Courts of Appeals. Section 1255a(f)(1) closes the circle by explicitly rendering the scheme exclusive: "There shall be no administrative or judicial review of a determination respecting an application for adjustment of status under this section except in accordance with this subsection.

\*　　\*　　\*　　\*　　\*　　\*

> [A]n alien whose appeal has been rejected ... stands (except for a latent right to judicial review of that rejection) in the same position he did before he applied; he is residing in the United States in an unlawful status, but the Government has not found out about him yet. We call the right to judicial review "latent" because § 1255a(f)(4)(A) allows judicial review of a denial of adjustment of status only on appeal of "an order of deportation." Hence, the alien must first either surrender to the INS for deportation or wait for the INS to catch him and commence a deportation proceeding and then suffer a final adverse decision in that proceeding, before having an opportunity to challenge the INS's denial of his application in Court.

*Id.* (footnotes omitted). Hence, Waldei, was a stowaway[4] at the time he applied for legalization on March 15, 1988, and was a stowaway when his application for adjustment of status was denied.

**3.** *See also* § 245A(f)(4)(A) of the INA, 8 U.S.C. § 1255a(f)(4)(A).

**4.** Waldei's application for asylum was denied November 19, 1982. In 1984, the BIA found that his status as a parolee had been revoked, returning him to the status of a stowaway. *Matter of Waldei, supra.*

Although physically inside the United States, Waldei has never been determined to have made statutory entry by virtue of his status as a stowaway. Instead, he is considered legally detained at the border, "thus subject to exclusion rather than deportation." *Fragedela v. Thornburgh,* 761 F.Supp. 1252, 1253 n. 1 (W.D.La.1991) (citing *Garcia–Mir v. Smith,* 766 F.2d 1478, 1484 (11th Cir.1985), cert. denied, 475 U.S. 1022, 106 S.Ct. 1213, 89 L.Ed.2d 325 (1986)). "Those who have entered the country, even illegally, possess greater constitutional and statutory rights in the immigration and deportation context." *Id.* Exclusion proceedings differ from deportation proceedings in a number of ways. *Delgado–Carrera,* 773 F.2d at 631 (citing *Landon v. Plasencia,* 459 U.S. 21, 24, 103 S.Ct. 321, 324–25, 74 L.Ed.2d 21 (1982)).

> ... the Alien cited in a deportation hearing has the benefit of more protective procedural and substantive rights and a stricter standard of judicial review. An alien who is placed on parole after physically entering the United States is treated in the "same manner as ... any other applicant for admission to the United States." A paroled alien is in the same position as one who seeks admission at the border.

> A paroled alien is, therefore, not deemed to be within the United States and is subject to exclusion just as if he were initially appearing at the border seeking entry.

*Id.*[5] Therefore, the law views Waldei as remaining at the border. *Leng May Ma v. Barber,* 357 U.S. 185, 78 S.Ct. 1072, 2 L.Ed.2d 1246 (1958). Because a final order of exclusion has been made, Waldei is barred from obtaining judicial review in this Court.[6] More specifically, Waldei is not seeking judicial review of a deportation order, as he has never been subject to deportation proceedings as distinguished from his exclusion proceedings. Clearly, the statutory language setting the limits of the jurisdictional bar precludes review by the district court jurisdiction over Waldei's action challenging the denial of his legalization application.

In rebuttal to the jurisdictional issue raised by the government, Waldei infers in his memorandum, "that the language relied upon by respondents was intended to *restrict* judicial review, not to eliminate it altogether; [t]he cited statute does not state that there shall be *no* judicial review of a legalization denial where the claimant [is] in exclusion rather than deportation proceedings;" that "omission of such language may simply be an oversight." (Rec. Doc. 11). Waldei does not cite any statutes, judicial decisions, regulations, treatises, articles or analysis in support of his contentions and makes an insufficient argument for jurisdiction.

Despite any legal presumption favoring interpretations of statutes to allow for judicial review of causes of action by those claiming to be suffering adversely because of administrative actions, *Abbott Laboratories,* 387 U.S. at 140, 87 S.Ct. at 1510–11; *McNary v. Haitian Refugee Center, Inc.,* 498 U.S. 479, 496, 111 S.Ct. 888, 898, 112 L.Ed.2d 1005 (1991), this Court concludes that it is nonetheless precluded from such review in the instant case. The plain language of the statute indicates that Congress intended to permit judicial review of legalization denials by the LAU only within the context of a deportation proceeding.

**B. Adjustment of Status: Legalization and EVD**

■ Even assuming under the government's alternative argument that this Court

---

5. *See Delgado–Carrera,* 773 F.2d at 631 which states:

> "[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission ... and those who are in the United States after an entry, irrespective of its legality," the Supreme Court said in *Leng May Ma v. Barber,* 357 U.S. 185, 187, 78 S.Ct. 1072, 1073, 2 L.Ed.2d 1246 (1958). As the Court noted, the distinction was "carefully preserved" in the Immigration and Nationality Act. Those seeking admission or readmission are subject to "exclusion proceedings" to determine whether "they shall be

allowed to enter or shall be excluded or deported". 8 U.S.C. § 1226(a). On the other hand, aliens who have already entered the United States are subject to "expulsion" through deportation procedures, as distinguished from "exclusion," if they fall within certain "general classes of deportable aliens." 8 U.S.C. § 1251.

6. 8 U.S.C. § 1255a(f)(4) provides: "There shall be judicial review of such a denial only in the judicial review of an order of deportation under section 1105a of this title."

could review the action of the LAU, the petitioner has not shown that he is entitled to the relief sought. The precise issue presented is whether the LAU's denial of Waldei's application for adjustment of status in "regular" legalization proceedings as well as the denial of relief pursuant to EVD program was proper because he had not statutorily entered the United States by January 1, 1982 or July 21, 1984, respectively. The standard for judicial review is set forth at 8 U.S.C. § 1255a(f)(4)(B) as established for the amnesty program. The administrative and judicial review scheme applicable in the EVD program is in § 902(b) of the Foreign Relations Authorization Act of 1988, 8 C.F.R. 245a.4 and is the same as that established for the amnesty program. Section 1255a(f)(4)(B) reads as follows:

> **(B) Standard for judicial review.** Such **judicial review shall be based solely upon the administrative record** established at the time of review by the appellate authority **and the findings of fact and determinations contained in such record shall be conclusive** unless the applicant can establish abuse of discretion or that the findings are directly contrary to clear and convincing facts contained in the record considered as a whole.

(Emphasis added).

Waldei contends that: (1) the LAU failed to advance the "entry" issue as a ground for denial of amnesty through the "regular" legalization program; (2) that the undated parole revocation notice made it unclear whether he was ineligible to adjust his status; (3) that the LAU's finding regarding "entry" was inconsistent with *Bamondi v. INS*, CV No. 88–1410–EBG (S.C.Cal. July 13, 1989), on remand, No. 90–56294 (9th Cir. March 10, 1992); and (4) that the LAU's denial of adjustment of status under EVD legalization based on "entry" into the U.S. was clearly erroneous. On the other hand, the government maintains that: (1) Waldei did not enter the United States prior to January 1,

1982, and was therefore ineligible for amnesty; (2) that the LAU addressed the "entry" issue at the beginning of its opinion along with the parole status of the alien; (3) that it is of no consequence to the disposition of the case when parole status was revoked as parole does not constitute an "entry" into the country; and (4) that *Bamondi, supra*, is distinguishable from the instant case.

 The major issue at the heart of the dispute in both Waldei's application for adjustment of status in "regular" legalization proceedings and the request for relief pursuant to the EVD program is whether he made an "entry"[7] into the United States such that he could be a benefactor of the provisions of either program and ultimately ensure his ability to remain in the United States. The administrative record reflects conclusive findings of fact and determinations[8] that Waldei did not enter the U.S. prior to January 1, 1982, as required for amnesty; nor prior to July 21, 1984, as required under the EVD program. The Court must base its determination solely upon the administrative record unless the applicant establishes: (1) abuse of discretion or (2) findings contrary to clear and convincing facts in the record as a whole. Since no evidence has been presented establishing either abuse of discretion, or contrary findings to the facts contained in the record, this Court adopts the Opinion of the LAU dated July 9, 1993, as its own. (Rec. Doc. 1, Exh. 15).

Although Waldei maintains that the LAU erred in finding that his parole status did not terminate prior to January 1, 1982, that the undated revocation notice makes the date undeterminable and that the record is "devoid of supporting proof" for finding him ineligible for relief in "regular" legalization proceedings, the Court disagrees. The Court specifically finds that the LAU properly found, as had the Regional Processing

---

**7.** "Entry" occurs either when an alien crosses the territorial boundaries of the United States and is admitted by an immigration officer or when an alien actually and intentionally evades inspection at the port of entry and is free from restraint any time thereafter. *United States v. Oscar*, 496 F.2d 492, 493–94 (9th Cir.1974);

*United States v. Vasilatos*, 209 F.2d 195 (3d Cir. 1954); *Edmond v. Nelson*, 575 F.Supp. 532, 535 (E.D.La.1983).

**8.** *See Matter of Waldei, supra.*

Facility, that Waldei was a parolee as of January 1, 1982.

The record reflects that the initial parole granted on September 11, 1980, had been extended as of November 13, 1981, approximately six weeks prior to the January 1, 1982 date in question. In addition, the INS District Director did not notify Waldei of his intent to deny his application for asylum until September 15, 1982, some eight months after the date in question. During the entire period his asylum application was being adjudicated (from September 11, 1980 through September 15, 1982), Waldei was a parolee, and accordingly, ineligible for adjustment to temporary resident status because he had not made the requisite "entry" into the United States.

Furthermore, in *Ahrens v. Rojas,* 292 F.2d 406, 410–411 (5th Cir.1961), the Fifth Circuit quoted *Leng May Ma v. Barber,* 357 U.S. 185, 190, 78 S.Ct. 1072, 1075, 2 L.Ed.2d 1246 (1958) as follows:

> The purpose and effect of parole of alien applicants for admission into the United States is again explained in *Leng May Ma v. Barber* ...
>
> "The parole of aliens seeking admission is simply a device through which needless confinement is avoided.... It was never intended to affect an alien's status, and to hold that petitioner's parole placed her legally 'within the United States' is inconsistent with the congressional mandate, the administrative concept of parole, and the decisions of this Court."

Hence, for the above stated reasons, the LAU did not err in finding Waldei ineligible for amnesty under the alien legalization program as his parole status did not terminate prior to January, 1982.

Finally, Waldei asserts, unpersuasively, that the LAU's determination that he had not made an "entry" is inconsistent with the *Bamondi* case. Bamondi entered the U.S. in 1981, and resided here unlawfully until April of 1988. In April, 1988, he took a seven-hour trip to Tijuana, Mexico. Upon his return, he was detained and placed in exclusion proceedings by the INS. During his detention, he filed an application for legalization under IRCA along with a request for parole.

While Bamondi's request for parole was denied, he was found prima facie eligible for legalization. Nonetheless, he was not released from detention and in June 1988, was found excludable and ordered excluded and deported. In spite of ongoing legalization proceedings, the INS deported Bamondi without notice to his attorney. On September 15, 1988, a class action complaint for injunctive, declaratory and mandamus relief was filed by persons eligible for legalization who were present in the U.S. and subject to exclusion proceedings.

On the basis of numerous facts detailed in the record, *Bamondi* is clearly distinguishable from the instant case. The most significant distinction being Waldei's arrival as a stowaway aboard the M/V George Whyte in contrast to Bamondi becoming an "excludable" alien as a result of a seven hour trip to Mexico from the United States by car. "The INA draws a clear distinction between the treatment afforded 'excludable' aliens who are detained pending final determination on their exclusion, and stowaways." *Argenbright Sec. v. Ceskoslovenske Aeroline,* 849 F.Supp. 276, 280 (S.D.N.Y.1994). "In striking contrast, [to 'excludable aliens'] stowaways are considered to be a 'disfavored' category of aliens." *Id.,* (citing *Yiu Sing Chun v. Sava,* 708 F.2d 869, at n. 21 (2d Cir.1983)) (referring to stowaways as a highly disfavored class). Thus, based on its facts, *Bamondi* offers no support for Waldei's claims in this case.

### C. Asylum

There is no dispute that this Court has jurisdiction to review Waldei's challenge concerning the denial of his request for asylum by the INS. *INS v. Stanisic,* 395 U.S. 62, 68 n. 6, 89 S.Ct. 1519, 1523 n. 6, 23 L.Ed.2d 101 (1969) (noting that district courts have jurisdiction to review district director's denial of asylum to alien crewman); *Fleurinor v. INS,* 585 F.2d 129, 136 n. 6 (5th Cir.1978) (allegations of procedural irregularities in asylum proceedings before the INS district director are reviewable before the appropriate district court); *Garcia v. Smith,* 674 F.2d 838, 840 (11th Cir.1982), *reh'g denied & opinion modified,* 680 F.2d 1327 (11th Cir.1982) (district

court has jurisdiction to hear stowaway petitions for habeas corpus regarding claims arising from the denial of his request for asylum). Accordingly, the Court will review Waldei's asylum challenge *de novo.*

■ Waldei's primary contention is that the government should be estopped from deporting him because of the INS' "affirmative misconduct." This allegation is based upon claims of INS' "deliberate refusal" and "illegal delay" in adjudicating what it conceded was a "valid claim" for asylum. Assuming arguendo that estoppel would apply against the government in this instance, Waldei "would have to prove affirmative misconduct by the government or its agent, reasonable reliance thereon, and prejudice thereby." Annotation, *Applicability and Effect of Equitable Estoppel Doctrine In Immigration and Naturalization Proceedings,* 95 A.L.R.Fed. 262, 271.

Traditionally, estoppels against the government have not been favored. The courts have imposed estoppels in very "limited situations." *Gestuvo v. District Dir. of INS,* 337 F.Supp. 1093, 1097 (C.D.Cal.1971). As noted by Justice Rehnquist in his concurring opinion in *Heckler v. Community Health Services,* 467 U.S. 51, 66–67, 104 S.Ct. 2218, 2227–28, 81 L.Ed.2d 42 (1984), delay or neglect of duty on the part of government agents cannot form the basis for an estoppel claim against the government. *Id.* (citing *Utah Power & Light Co. v. United States,* 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791 (1917)). "Although the [Supreme Court] court has declined to give more specific guidance ... we can glean from the facts of its cases some idea of the appropriate standards for determining when the government may be estopped. These cases indicate that a party seeking to estop the government bears quite a heavy burden." *Fano v. O'Neill,* 806 F.2d 1262, 1265 (5th Cir.1987).

In *Fano,* the Fifth Circuit reviewed the relevant Supreme Court immigration and naturalization cases and concluded that some sort of "affirmative misconduct" must be shown before equitable relief is available. *Id.* "In light of [those] cases, to state a cause of action for estoppel against the government, a private party must allege more than mere negligence, delay, inaction or failure to follow an internal agency guideline." *Id.* Moreover to prevail on a claim for estoppel against deportation based on "affirmative misconduct," the alien must show that the misconduct was "tantamount to 'willfulness, wantonness, and recklessness.'" *Mendoza–Solis v. INS,* 36 F.3d 12, 14 (5th Cir.1994) (citing *Fano,* 806 F.2d at 1265).

Waldei's evidence, in support of his claim of "affirmative misconduct" on the part of the INS for deliberately refusing to adjudicate his asylum application in a timely manner,[9] consists primarily of (1) a statement in INS internal correspondence where the BHRHA informed an INS official that he had a valid claim to asylum [Rec. Doc. 1, Exh. 3]; (2) the BHRHA advisory opinion dated August 6, 1982 [Rec. Doc. 1, Exh. 4]; and (3) a citation to *Fano v. O'Neill,* without analysis or argument in either the petition or subsequent memorandum. (Rec. Doc. 11).

The government in its opposition argues: (1) that the statement regarding "a valid asylum claim" does not reflect anything more than a non-binding advisory opinion from the BHRHA to the INS as required by 8 C.F.R. §§ 208.7, 208.8 (1981); (2) that the claim that any delay in adjudicating the asylum application prejudiced Waldei is inconsistent with *INS v. Miranda,* 459 U.S. 14, 18, 103 S.Ct. 281, 283, 74 L.Ed.2d 12 (1982), and that even assuming prejudicial negligence in delay exists it is, without more, insufficient to estop the government; (3) that unlike *Fano,* Waldei has not shown that but for the delay, he

---

9. According to Richard D. Steel, *Steel on Immigration Law* § 8:07(e) (1995):

Certain cases are processed immediately. These include cases that involve political sensitivity, possible forcible repatriation, nationals of the Soviet Union, nationals of various communist countries in the United States as part of an official visit, members of formal cultural or athletic exchange groups, exchange student program members, persons involved in state-owned business or enterprise activity who are in transit through the United States in such capacity, any diplomat, consular officer, or foreign official regardless of the country involved, or any other case for which there are special problems requiring prompt attention. An expedited procedure for such cases is provided for in the Operations Instructions.

would have been granted the discretionary relief of asylum; and (4) that Waldei was given ample opportunity to respond to or rebut the INS' finding twelve years earlier.

The Court finds that Waldei has failed to present evidence showing that any delay by the INS in adjudicating his asylum claim constituted either the insufficient "prejudicial negligence" or misconduct "tantamount to willfulness, wantonness, and recklessness." *Mendoza–Solis*, 36 F.3d at 14; *Fano*, 806 F.2d at 1265. Again, Fifth Circuit jurisprudence teaches that Waldei must allege more than mere negligence, delay or inaction in order to state a claim for estoppel against the United States. *Id.* Therefore, assuming that estoppel against the government is available "in a rather narrow possible range of circumstances," as suggested by Justice Rehnquist in his concurrence in *Heckler, supra*, and recognized by the Fifth Circuit, the petitioner has not presented proof that such estoppel would be appropriate here.

### Conclusion

This Court realizes that Waldei's immigration problems begin and end with his status as an entrant stowaway. "[T]he available legislative history suggests, Congress intended to completely exclude stowaways in order to preclude their illegal immigration." *Argenbright Sec.*, 849 F.Supp. at 281. "Congress may legitimately draw [such] distinctions between classes of aliens." *Mendoza*, 36 F.3d at 14 (citing *Fiallo, supra*). Consequently, "a stowaway is automatically excluded from the very outset." *Argenbright Sec.*, 849 F.Supp. at 281. The INS draws a clear distinction between "excludable aliens" and stowaways. "In striking contrast, stowaways are considered to be a 'disfavored' category of aliens. Aliens who are merely excludable, but not ... excluded, are entitled to an exclusion hearing before an immigration judge ..., and an appeal to the Attorney General in the event of an adverse determination." *Id.* "The fact that stowaways may now apply for political asylum does not alter their excluded status." While a stowaway is entitled to apply for asylum, the right is limited to a hearing "solely to the issue of asylum eligibility." *Id.* Thus, despite the availability of an asylum hearing, stowaways remain 'excluded'

aliens. *Linea Area Nacional de Chile, S.A. v. Sale*, 865 F.Supp. 971, 980 (E.D.N.Y.1994), *aff'd*, 65 F.3d 1034 (2d Cir.1995).

Despite this ruling, the fact remains that the petitioner has been physically within the United States for over fifteen years. The Court hopes that this fact is considered in any future immigration proceedings involving Mr. Waldei.

Accordingly,

**IT IS ORDERED** that Waldei's petition for habeas corpus is **DENIED with prejudice.**